EARL C. GIBBS, Inc. v. RECONSTRUCTION FINANCE CORPORATION.

No. 442.

United States Emergency Court of Appeals.

Heard at Washington, March 29, 1948.

Decided Aug. 19, 1948.

Arthur L. Winn, Jr., of Washington, D. C. (Wilbur La Roe, Jr., Frederick E. Brown and Samuel H. Moerman, all of Washington, D. C., on the brief), for complainant.

George A. Fruit, of Washington, D. C. (Joseph M. Friedman, Sp. Asst. to the Atty. Gen., and Samuel K. Abrams, Atty., Dept. of Justice, and John C. Erickson, Counsel, and Jack W. Loeb, Atty., both of Reconstruction Finance Corporation, all of Washington, D. C., on the brief), for respondent.

Before MARIS, Chief Judge, and MAGRUDER and LINDLEY, Judges.

MARIS, Chief Judge.

The complainant is a slaughterer of livestock and as such was entitled to receive and did receive from Defense Supplies Corporation from and after June 7, 1943 the subsidy payments with respect to its livestock slaughter which were provided for by Regulation No. 3 issued by that corporation.[1] Between June 14, 1943 and November 11, 1943 the complainant sold 248,144½ pounds of ground beef at the price of 20½ cents per pound instead of at the lawful maximum price of 18¼ cents per pound fixed by Revised Maximum Price Regulation No. 169. The overcharge, amounting to $5,583.25, was inadvertently made in good faith and resulted from an error on the part of the vice-president of the complainant in determining the application of RMPR 169 to the sales in question. As soon as the error was discovered by the complainant it adjusted its prices accordingly, reported the overcharge to the Office of Price Administration and paid it the amount of the overcharge as the minimum penalty exacted by Sec. 205(e) of the Emergency Price Control Act, as amended, 50 U.S.C.A.Appendix, § 925(e). In a letter acknowledging receipt of the payment the District Enforcement Attorney of the OPA said:

"We wish gratefully to acknowledge that this matter of inadvertent overcharge on your part was brought to our attention voluntarily by you by your letter of November 11, 1943. We also further acknowledge that prior to receipt of your letter we had received no complaint from any person whomsoever concerning the overcharges above referred to, and at that time had no investigation in progress with respect to this matter. We feel that you have evidenced the best spirit of cooperation with the price control program and your desire to comply, with all rules and regulations by calling this matter to our attention without any request by us so to do.

"We regret that despite the fact that your overcharges were wholly inadvertent, this Office has no alternative but to accept the amount aforesaid as the minimum amount which must be paid under Section 205(e) of the Act aforesaid. We express the hope that no similar matter will arise in the future to your financial embarrassment. Again accept our thanks."

Three years later the respondent, Reconstruction Finance Corporation, the successor to Defense Supplies Corporation as agent for the payment of the livestock slaughter subsidy under Revised Regulation No. 3, learned of the overcharges made by the complainant. The respondent thereupon, on its own motion and without any request by the Price Administrator, recouped from the complainant $5,583.25 of the subsidy previously paid to the complainant. The respondent did this by deducting that amount from the subsidy due the complainant for September and October, 1946. The complainant protested the action of the respondent in making this deduction. Its protest was denied by the board of directors of the respondent and the complaint now before us was filed.

It is clear that the only express authority conferred upon the respondent by Revised Regulation No. 3 to invalidate a subsidy claim upon the ground that the claimant has violated a price regulation is contained in Sec. 7003.10(a) of the regulation. That section, however, as it stood at the time of the deduction in 1946 required a determination by the Price Administrator that the claimant had wilfully violated an applicable regulation or a certificate by that officer that the claimant had been determined in a civil proceeding to have violated a substantive provision of an applicable regulation.[2] It is conceded that no

---

[1] Regulation No. 3 was issued June 16, 1943, effective June 7, 1943. 8 F.R. 10826.

[2] Section 7003.10(a) of Regulation No. 3 as originally issued and of Revised Reg-

such determination or certificate was made by the Price Administrator in this case. The respondent urges, however, that it had inherent authority, wholly irrespective of Revised Regulation No. 3, to deduct from the complainant's subsidy payments a sum equal to its admitted overcharges. This right, it says, is just as fundamental as its right to reduce a subsidy claim for arithmetical error. We do not agree.

As this court has heretofore had occasion to point out[3] the livestock slaughter subsidy was basically a production subsidy and as such had as its statutory authority Sec. 2(e) of the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 902(e). It was, however, not a mere gratuity or bounty but was closely articulated with the price control program and operated as compensatory in nature so as to validate a lower level of legal maximum meat prices than otherwise would have been permissible under the standards laid down in the Emergency Price Control Act for the guidance of the Price Administrator.[4]

Sec. 2(e) provided that all subsidies authorized under the section should be paid by corporations created or organized pursuant to Sec. 5d of the Reconstruction Finance Corporation Act, 48 Stat. 1108, as amended, 54 Stat. 962. Accordingly provision was made for the payment of the livestock slaughter subsidy by Defense Supplies Corporation, which was such a corporation, until its dissolution on June 30, 1945 after which it was paid by Reconstruction Finance Corporation itself until the termination of the subsidy program. The corporations in question were mere paying agents,[5] however, without discretionary powers, since Sec. 2(e) expressly provided that payment of the subsidies authorized by it should be "upon such terms and conditions" as, in the case of commodities defined by the President as strategic or critical materials, were determined by the Federal Loan Administrator, with the approval of the President, to be necessary to attain their purpose. By Executive Order No. 9250, 50 U.S.C.A.Appendix, § 901 note,[6] issued under the Stabilization Act of 1942, 50 U.S.C.A.Appendix, § 961 et seq., the President delegated to the Economic Stabilization Director general authority over the stabilization program including the payment of subsidies in connection therewith. By letter dated May 6, 1943 to the Federal Loan Administrator the President defined beef, veal, pork, lamb and mutton as strategic and critical materials. Accordingly it was the Federal Loan Administrator acting under the direction of the Economic Stabilization Director, and not Defense Supplies Corpora-

---

ulation No. 3, effective January 19, 1945 (10 F.R. 4241), reads in pertinent part as follows: "(a) *Compliance with other regulations.* Defense Supplies Corporation shall have the right to declare invalid, in whole or in part, * * * any claim filed by an applicant who, in the judgment of * * * the Price Administrator, * * * has wilfully violated any regulation * * * applicable to the purchase or sale of livestock or to livestock slaughter or to the sale or distribution of meat."

As amended by Amendment No. 3, issued April 24, 1945, effective May 5, 1945 (10 F.R. 8073), Sec. 7003.10(a) of Revised Regulation No. 3 reads in pertinent part as follows: "(a) *Compliance with other regulations.* Defense Supplies Corporation shall declare invalid, in whole or in part, any claim filed by an applicant who, in the judgment of * * * the Price Administrator, has wilfully violated any regulation or order * * * applicable to the purchase or sale of livestock or to livestock slaughter or to the sale or distribution of meat, and any claim of any applicant who the Price Administrator certifies to Defense Supplies Corporation has been determined in a civil proceeding to have violated a substantive provision of any regulation or order of the Office of Price Administration applicable to the purchase or sale of livestock or to livestock slaughter or to the sale or distribution of meat."

[3] See Armour & Co. v. Reconstruction Finance Corporation, Em.App., 1947, 162 F.2d 918, 922 and cases there cited.

[4] Illinois Packing Co. v. Snyder, Em. App., 1945, 151 F.2d 337, 339.

[5] Earl C. Gibbs, Inc. v. Defense Supplies Corporation, Em.App., 1946, 155 F.2d 525, 530.

[6] 7 F.R. 7871.

tion or Reconstruction Finance Corporation, who was empowered to determine the terms and conditions under which the livestock slaughter subsidy was to be paid.

On May 7, 1943 the Economic Stabilization Director informed the Federal Loan Administrator by letter that he had determined that it was necessary to pay subsidies in connection with the production of beef, veal, pork, lamb and mutton, inter alia, to insure their maximum necessary production and distribution and to maintain the ceiling prices thereon which were then being reduced by 10%. In the same letter the Economic Stabilization Director directed the Federal Loan Administrator to cause one of the corporations organized under Sec. 5d of the Reconstruction Finance Corporation Act, as amended, to make subsidy payments "to such parties, in such manner and in such amounts as you and the Price Administrator find will be necessary to maintain the necessary maximum production of these products in view of the reduction of the ceiling prices on such commodities." On the same day the Federal Loan Administrator wrote to the president of Defense Supplies Corporation stating his findings that

"1. The maximum necessary production of beef, veal, pork, lamb, mutton, * * * may not be obtained during the ensuing year unless subsidies are paid to packers and wholesalers of these commodities.

2. It is necessary in order to assure the maximum necessary production for Defense Supplies Corporation to subsidize the packers and wholesalers in such amounts as may from time to time be determined by me to be necessary to reimburse them for the reduction in ceiling prices."

The letter ended with the following direction: "Will you please request Defense Supplies Corporation to take the necessary action to put this into effect."

The letter bore the initialed approval of the President of the United States.

Pursuant to the direction just quoted Defense Supplies Corporation on June 16, 1943 issued Regulation No. 3, effective June 7, 1943, which provided for the payment of the livestock slaughter subsidy and, as we have seen, expressly authorized the corporation to invalidate subsidy claims in cases where the claimant, in the judgment of the Price Administrator had wilfully violated an applicable regulation or order. The regulation, we must assume, had the approval of the corporation's supervising and controlling authority, the Federal Loan Administrator, who had just directed its issuance.[7] The subsequent amendment on April 24, 1945[8] of Sec. 7003.10(a) of Revised Regulation No. 3 which enlarged the cases in which the corporation might invalidate subsidy claims to include those in which the Price Administrator certified that the claimant had been determined in a civil proceeding to have violated a substantive provision of a regulation or order was issued pursuant to an express directive of the Economic Stabilization Director to the corporation to make that particular enlargement in the class of cases subject to invalidation while at the same time continuing the procedure of invalidating subsidy claims of claimants determined by the Price Administrator to be wilful violators of the regulations.[9] In this connection it is significant to note that by the same directive the Price Administrator was ordered to make a determination of wilful violation for purposes of subsidy invalidation "only in the event the alleged violation is referred to the United States Attorney for prosecution."

These express directions and limitations as to those claimants otherwise entitled to the livestock slaughter subsidy who may be denied subsidy payments because of having violated price regulations were, as we have seen, laid down with the approval of the officials entitled to determine the terms and conditions of subsidy payments.[10]

---

[7] See Earl C. Gibbs, Inc. v. Defense Supplies Corporation, Em.App., 1946, 155 F.2d 525, 530.

[8] See Footnote 2, supra.

[9] Directive 41, § 7(b), 10 F.R. 4494.

[10] Not only must a claimant have been determined by the Price Administrator to have been a wilful violator (unless he has been determined in a civil proceeding to be a violator) before his subsidy claim can be invalidated under the regulation by the Reconstruction Finance Corpora-

They clearly exclude the idea that a claimant whose violation of a price regulation has been wholly inadvertent and in good faith and who has immediately after self discovery of it made settlement for his overcharge without the necessity of a civil proceeding being brought against him may nonetheless be denied subsidy payments because of the violation. Indeed, to hold that the subsidy paying agents, Defense Supplies Corporation and its successor Reconstruction Finance Corporation, had inherent authority to invalidate the subsidy claim of such a claimant would render Section 7003.10(a) of the regulation wholly superfluous and meaningless. We conclude that the respondent had no such independent inherent power as it now claims but that its power to invalidate subsidy claims otherwise within the scope of Revised Regulation No. 3 is limited to the cases expressly provided for by the regulation.[11]

This, of course, is not to say that the respondent did not have the authority to reduce a claim for mathematical error. As paying agent it was its duty and responsibility to determine whether a claim for subsidy presented to it came within the provisions of Regulation No. 3 in whole or in part. Indeed Sec. 7003.9(e) of Revised Regulation No. 3, as added by Amendment No. 3,[12] expressly provided that the paying agent should have "the right to declare invalid, in whole or in part, any claim which does not meet the requirements of this regulation." The respondent was, therefore, empowered to determine whether the claimant had brought himself within the class to which the regulation authorized the payment of the subsidy and whether his claim had been correctly computed under the regulation. But if the claimant was within the class to which the regulation granted the subsidy and if his claim was correctly computed and supported under the regulation the

corporation did not have authority to deny the claim on the ground that the claimant had violated other regulations unless there had been a determination or certification with respect to the claimant by the Price Administrator as required by Sec. 7003.-10(a). In the present case there neither was nor could have been such a determination or certification. For, as we have seen, the complainant's overcharge was admittedly inadvertent, it acted in perfect good faith in immediately settling with the Price Administrator for the amount of the overcharge and no civil proceedings were or, at the time the respondent acted, could have been brought against it with respect thereto.

A judgment will be entered setting aside the order of the Reconstruction Finance Corporation of October 30, 1947 denying the complainant's protest and remanding the case to that corporation for further proceedings not inconsistent with this opinion.

## WM. SCHLUDERBERG–T. J. KURDLE CO. v. RECONSTRUCTION FINANCE CORPORATION.

---

tion, but in addition the claimant has the right under the act to have the question determined de novo by the board of directors of the Reconstruction Finance Corporation on his protest. Armour & Co. v. Reconstruction Finance Corporation, Em.App., 1947, 162 F.2d 918, 923.

[11] See Maloney Packing Co. v. Reconstruction Finance Corporation, Em.App., 1947, 159 F.2d 717, 720.

[12] 10 F.R. 8073. Similar language had previously been included in Sec. 7003.10 (a) and was transferred to the new subsection (e) of Sec. 7003.9 by Amendment No. 3.