182 F.2d 614
 SAN ANTONIO PACKING CO.
v.
RECONSTRUCTION FINANCE CORPORATION.
 No. 529.
 United States Emergency Court of Appeals.
 Heard at Washington, D. C., April 3, 1950.
 Decided June 9, 1950.
 
 Herman A. Greenberg, Washington, D. C., for the complainant.
 Anthony L. Mondello, Attorney, Department of Justice, Washington, D. C., with whom Joseph M. Friedman, Special Assistant to the Attorney General, was on the brief, for the respondent.
 Before MARIS, Chief Judge, and LINDLEY and LAWS, Judges.
 MARIS, Chief Judge.
 
 
 1
 The complainant partnership during the year 1945 was in the business in San Antonio of purchasing and slaughtering live cattle and hogs and selling carcasses and wholesale cuts.[1] It, therefore, was entitled to livestock slaughter subsidy payments in accordance with the regulations in effect in 1945. For the months from May through December of that year, it filed subsidy claims in the aggregate amount of $25,027.47. Based on a certification by the Office of Temporary Controls (the successor to the Office of Price Administration[2]) that a judgment in a civil action had been obtained against the complainant for violation of Maximum Price Regulation No. 169 the respondent invalidated these subsidy claims under the authority of Section 7003.10(a) of Revised Livestock Slaughter Payments Regulation No. 3, as amended. The claims have previously been paid, the amount involved was recouped in part by the respondent from subsidy claims payable for subsequent accounting periods. The balance of $10,902.90 has not yet been repaid by the complainant. The complainant protested respondent's action, its protest was denied by the board of directors of the respondent, and the present complaint was filed.
 
 
 2
 It appears that the civil action to which the Office of Temporary Controls referred in its certificate was brought by the Price Administrator against the predecessor of the complainant partnership in the United States District Court for the Western District of Texas, that it was based upon alleged charges for the sale of boned beef in excess of ceiling prices for the year 1945 amounting to $560.35, and that judgment was entered therein by agreement of the parties for damages equal to one and one-half times that amount.
 
 
 3
 The complainant does not dispute the fact that Section 7003.10(a) of Revised Livestock Slaughter Payments Regulation No 3, as amended, in terms authorized the respondent to invalidate the claims of an applicant for subsidy who had been certified to have been determined in a civil proceeding to have violated a subsidy provision of a price regulation applicable to the sale of meat. The complainant asserts, however, that the regulation in authorizing the invalidation of subsidy claims amounting to $25,027.41 because of price ceiling overcharges amounting to only $560.35 was invalid because the amount authorized to be invalidated is so grossly disproportionate to the amount of the violation as to result in a penalty not authorized by the Emergency Price Control Act, 50 U.S.C.A.Appendix § 901 et seq. It also contends that so far as concerns the invalidation of its subsidy claims for the months of May, July, August and September, 1945, there was no basis in the regulation for the respondent's action. The consideration of these contentions requires a review of the legal bases for the invalidation of subsidy claims by the respondent.
 
 
 4
 At the outset we must remember that the respondent is a mere subsidy paying agent[3] as was its predecessor in the subsidy program, Defense Supplies Corporation.[4] It has no discretionary power to invalidate subsidy claims which meet the requirements of Revised Livestock Slaughter Payments Regulation No. 3, as amended, except to the extent that such power is conferred by that regulation. When we turn to the regulation we find that the sole provisions authorizing invalidation of subsidy claims for violation of price regulations are contained in Section 7003.10(a). As amended by Amendment No. 3[5] Section 7003.10(a) provided as follows: "§ 7003.10 Invalid claims — (a) Compliance with other regulations. Defense Supplies Corporation[6] `shall declare invalid, in whole or in part, any claim filed by an applicant who, in the judgment of the War Food Administrator or the Price Administrator, has wilfully violated any regulation or order of their respective agencies applicable to the purchase or sale of livestock or to livestock slaughter or to the sale or distribution of meat, and any claim of any applicant who the Price Administrator certifies to Defense Supplies Corporation has been determined in a civil proceeding to have violated a substantive provision of any regulation or order of the Office of Price Administration applicable to the purchase or sale of livestock or to livestock slaughter or to the sale or distribution of meat."
 
 
 5
 These provisions of Revised Livestock Slaughter Payments Regulation No. 3 were promulgated by Defense Supplies Corporation under the authority of the Federal Loan Administrator[7] pursuant to Directive 41[8] issued by the Economic Stabilization Director who had overriding supervision of the stabilization program.[9] Section 7003.10(a) must accordingly be construed in the light of the applicable provisions of the directive. Those provisions are contained in Section 7(b) thereof and are as follows:
 
 
 6
 "(b) (1) Defense Supplies Corporation[10] is directed to continue its present procedure of declaring invalid, in whole or in part, any claim for subsidy payment filed by an applicant who, in the judgment of the Price Administrator, has wilfully violated any meat or livestock regulation or order issued by the Price Administrator. Such a judgment shall be made only in the event the alleged violation is referred to the United States Attorney for prosecution.
 
 
 7
 "(2) Upon a nisi prius determination in a civil action or proceeding (including a proceeding before a hearing commissioner) against a subsidy applicant, that such applicant has violated any substantive provision of an Office of Price Administration meat or livestock regulation or order, the Office of Price Administration shall certify the determination to Defense Supplies Corporation, including the period of time during which the violation is found to have occurred. Defense Supplies Corporation shall thereupon withhold payment on all subsidy claims of the applicant for the accounting period in which the violation is found to have occurred. At the same time that the certification is made to Defense Supplies Corporation, the Office of Price Administration shall in writing notify the subsidy applicant that the certification is being made and request the applicant to submit to the Office of Price Administration a signed statement indicating whether he operates more than one selling establishment and, if so, giving for the accounting period or periods during which the determination of violation was made, the gross dollar sales of meat and related products made through the establishment determined to be in violation and the gross dollar sales of meat and related products of all establishments. Upon receipt of such signed statement giving the gross dollar sales as specified, in the event the applicant has more than one selling establishment, the Office of Price Administration shall determine what percentage of the applicant's gross dollar sales of all establishments is represented by the gross dollar sales of the establishment determined to be in violation. The Office of Price Administration shall thereupon notify the Defense Supplies Corporation to change its withholding of subsidy payment to an amount equal to the specified percentage of the subsidy withheld following the certification. In the event that the determination of violation shall be reversed and such reversal become final, the amount of subsidy withheld pursuant to this paragraph shall be payable forthwith.
 
 
 8
 "For the purposes of this section, every provision of a regulation or order shall be deemed substantive in nature unless the Office of Price Administration determines otherwise."
 
 
 9
 It will be seen that Section 7003.10(a) of the regulation contains two clauses each providing for a distinct method for invalidating subsidy claims for violation of price regulations and corresponding respectively to the foregoing paragraphs (1) and (2) of Section 7(b) of the directive.
 
 
 10
 The first clause, which had been in the regulation from the beginning, directs the respondent to declare invalid in whole or in part, any subsidy claim filed by an applicant who in the judgment of the War Food Administrator or the Price Administrator has wilfully violated orders or regulations of their respective agencies. It will be observed that this clause applies only to wilful violations and, as limited by Section 7(b) (1) of Directive 41, only in case the violation has been referred to the United States Attorney for prosecution. The validity of this clause was upheld by this court in Armour & Co. v. Reconstruction Finance Corporation, Em.App.1947, 162 F.2d 918. While the provisions of the clause are not involved in the case before us it is pertinent to recall that we held in that case that the respondent in determining whether to invalidate such a subsidy claim "in whole or in part" is required to follow a standard having a reasonable relation to the facts of the particular case and the purpose of the regulation. The respondent had asserted that in exercising the discretion confided in it by the clause it had followed the practice of restricting the invalidation of such subsidy claims to those only for the accounting periods and particular establishments involved in the violations. With respect to this we said, 162 F.2d at pages 923, 924: "The criterion which is thus said to have been applied in administering the discretionary power conferred by the regulation is certainly logical, fair and reasonable."
 
 
 11
 The second clause of Section 7003.10(a) of Revised Livestock Slaughter Payments Regulation No. 3, as amended, is the one which is involved in this case. As we have indicated it was added to the regulation by Amendment No. 3 pursuant to Section 7(b) (2) of Directive 41. Construed, as it must be, in conformity with the provisions of the directive under which it was issued the clause directs the respondent to declare invalid the subsidy claim of any applicant who the Price Administrator certifies has been determined in a civil proceeding to have violated a substantive provision of an Office of Price Administration meat or livestock regulation or order. The certification of the Price Administrator is to include the period of time during which the violation occurred and the invalidation is to be limited to the subsidy claims for the accounting period in which the violation is found to have occurred and, if the applicant operates more than one selling establishment, to the establishment determined to be in violation.
 
 
 12
 As above stated the complainant contends that the second clause of Section 7003.10(a) of Revised Livestock Slaughter Payments Regulation No. 3, as amended, is invalid because it authorizes the invalidation of subsidy claims in an amount so grossly disproportionate to the amount of the applicant's violations as to amount to a penalty of a character not authorized by the Emergency Price Control Act to be imposed upon it. We do not agree. As we pointed out in Armour & Co. v. Reconstruction Finance Corporation, Em.App., 162 F.2d 918, 922, the purpose of Section 7003.10(a) was not to penalize violators but to prevent the diversion of subsidy funds from the accomplishment of the object for which they were intended. That object was to implement the price control program by supplementing the ceiling prices to be received by slaughterers for their meat to the extent necessary to make those prices generally fair and equitable.[11]
 
 
 13
 It was obviously not in accord with that purpose to pay a slaughterer any subsidy for a period in which it had been judicially determined that he had obtained from his sales of meat amounts in excess of the ceiling prices fixed by the price control program. To so provide was not, we think, to impose a penalty but merely to deprive the applicant of subsidy funds to which he had not shown himself entitled. The fact that in this case the amounts invalidated appear large in proportion to the violations which were proved is not legally significant. For Section 7(b) (2) of Directive 41 has established a definite standard of invalidation, namely, that the applicant's subsidy claims shall be invalidated only for the accounting periods involved in the violations and only for the selling establishments determined to be in violation. As we indicated in Armour & Co. v. Reconstruction Finance Corporation, Em. App., 162 F.2d 918, 923, we regard this standard for the invalidation of subsidy claims as having a sufficiently reasonable relation to the violations involved and the purposes of the regulation so that it cannot be regarded as arbitrary and capricious.
 
 
 14
 It appears, however, that in this case the respondent failed to restrict its invalidation of the complainant's subsidy claims to those for the accounting periods[12] in which violations had been determined to have occurred. For here the respondent has invalidated the complainant's subsidy claims for the eight months of May through December, 1945, although the complaint filed by the Price Administrator in the United States District Court discloses that none of the violations relied upon occurred in the months of May, July, August or September of that year. It, therefore, appears that the action of the respondent in invalidating the complainant's subsidy claims for those months was invalid because it was not authorized by the regulation.
 
 
 15
 The respondent's action in invalidating the complainant's subsidy claims here in question was based not only upon the certification by the Office of Temporary Controls that there had been a determination by the United States District Court for the Western District of Texas to which reference has already been made but also upon a certification by that office that the complainant had violated another price regulation, Maximum Price Regulation No. 148, in September, October and November, 1945. It appears, however, that no enforcement suit was ever brought with respect to these alleged violations, the matter being settled by a voluntary payment by the complainant to the Price Administrator. The respondent concedes that Section 7003.10(a) of Revised Livestock Slaughter Payments Regulation No. 3, as amended, does not give it authority to invalidate the complainant's subsidy claims by reason of these alleged violations. It asserts nonetheless that it had power to invalidate the complainant's subsidy claims in question upon its own determination that wilful violations of the regulation in question had taken place.
 
 
 16
 From what has already been said it is clear that the respondent does not have such power since as a mere paying agent it is restricted to the invalidating powers conferred upon it by the regulation. So far as here material these, as we have seen, require a certification by the Office of Price Administration (or its successor) and either reference to the United States Attorney for prosecution or a determination of violation in a civil proceeding as a condition precedent to the withholding of subsidy payments. While the respondent has succeeded to the certifying functions of the Price Administrator[13] the other conditions precedent have not been met in this instance. We conclude, therefore, that the violations by the complainant of MPR 148 cannot form a valid basis for the respondent's action.
 
 
 17
 The respondent makes another contention in support of its action. The contention runs this way. Section 7003.9(e) of Revised Livestock Slaughter Payments Regulation No. 3, as amended,[14] empowers the respondent to invalidate any subsidy claims which do not meet the requirements of that regulation. Section 7003.3(c) (1) of the regulation[15] authorizes it to approve the form of applications for subsidy payments. Pursuant thereto the respondent has required applicants to state that they have not wilfully violated any applicable price regulation during the accounting period for which subsidy is claimed. In its application for the months of September, October and November, 1945, the complainant made such a statement. Since the complainant had engaged in wilful violations of MPR 148 during those months the statement was untrue. Accordingly the applications were false and fraudulent and the respondent was empowered by Section 7003.9(e) to invalidate them.
 
 
 18
 We do not think that this contention can be sustained. Section 7003.9(e) of Revised Livestock Slaughter Payments Regulation No. 3, as amended, merely empowers the respondent to invalidate claims which fail to meet the requirements of that regulation. Under this section an application may be rejected which does not comply with the requirements of the regulation. But we have held that this provision does not authorize the respondent to invalidate subsidy claims for reasons not involving the claims themselves but based upon the applicant's failure to comply in its business operations with other regulations.[16] To hold otherwise would make Section 7003.10(a) wholly meaningless since it would enable the respondent itself to make the determinations of violations of price regulations which by that section and Directive 41 were required to be made by the Price Administrator and the courts. We do not read the regulation as involving any such inconsistency.
 
 
 19
 Nor do we find merit in the respondent's contention that Section 7003.10 (c) (4) of Revised Livestock Slaughter Payments Regulation No. 3, as added by Amendment No. 3,[17] empowers it to invalidate these claims. That provision of the regulation, which was inserted pursuant to Section 7(c) of Directive 41,[18] provides that the respondent shall declare invalid any claim filed by an applicant, who in the judgment of the Price Administrator has "engaged in any act or practice or operated in such a way that he would be ineligible to receive a subsidy payment," under the regulation. We think that this provision is primarily directed to practices in the conduct of livestock purchase and slaughter operations which would result in an applicant's ineligibility[19] and that it does not apply to violations of price regulations which have not been determined and certified in the manner provided by Section 7003.10(a). For here again to hold otherwise would make Section 7003.10(a) meaningless since it would enable the respondent itself to make the determinations of violations which by that section are required to be made by the Price Administrator and the courts. We do not think that the regulation should be construed in a way to result in such inconsistency.
 
 
 20
 Finally the respondent contends that its action in invalidating the subsidy claims in question should be upheld upon the theory that the complainant has acknowledged the propriety of the respondent's action in an account stated between the parties. This contention is based upon the fact that on July 16, 1947, the respondent rendered a statement of its claim against the complainant and demanded payment of the balance due thereon, and that on January 14, 1948, the complainant wrote to the respondent stating that it was willing to pay $300 per month on this claim until the account was cleared. We need not decide whether this was a true account stated,[20] however, since even an account stated may be impeached for mistake.[21] The complainant has met the burden of showing such mistake here as to the months of May, July, August and September, 1945.
 
 
 21
 A judgment will be entered setting aside the respondent's order invalidating the complainant's subsidy claims for the months of May, July, August and September, 1945, and dismissing the complaint as to all other relief sought thereby.
 
 
 
 Notes:
 
 
 [1]
 At that time the partners were doing business with two others under the firm name of "S. M. Reyes & Sons." The complainant partnership is regarded by both parties to this litigation as the successor to S. M. Reyes & Sons and no distinction between the two need be made for the purposes of this case
 
 
 [2]
 See Executive Order 9809, issued December 12, 1946, 11 F.R. 14281, 50 U.S.C.A. Appendix, § 601 note
 
 
 [3]
 Earl C. Gibbs, Inc. v. Defense Supplies Corporation, Em.App.1946, 155 F.2d 525, 530; Earl C. Gibbs, Inc., v. Reconstruction Finance Corp., Em.App.1948, 169 F. 2d 654, 658. We do not here refer to the powers which came to Reconstruction Finance Corporation as successor to the Temporary Controls Administrator by Executive Order 9841, 12 F.R. 2645, issued April 23, 1947, effective May 4, 1947, 50 U.S.C.A.Appendix, § 601 note
 
 
 [4]
 By the Act of June 30, 1945, 59 Stat. 310, c. 215, 15 U.S.C.A. § 611 note, Defense Supplies Corporation was dissolved effective July 1, 1945, and its functions were transferred to Reconstruction Finance Corporation
 
 
 [5]
 10 F.R. 8073, issued April 24, 1945, effective May 5, 1945
 
 
 [6]
 By amendment 6, 10 F.R. 11155, issued July 4, 1945, effective July 1, 1945, Reconstruction Finance Corporation was substituted for Defense Supplies Corporation in this regulation
 
 
 [7]
 See Earl C. Gibbs, Inc., v. Reconstruction Finance Corp., Em.App.1948, 169 F. 2d 654, 657
 
 
 [8]
 10 F.R. 4494, issued April 23, 1945, effective April 24, 1945
 
 
 [9]
 Act of October 2, 1942, 56 Stat. 765, c. 578, §§ 1, 2, 50 U.S.C.A.Appendix, §§ 961, 962; Executive Order 9250 issued October 3, 1942, 7 F.R. 7871, 50 U.S.C.A. Appendix, § 901 note
 
 
 [10]
 By Amendment 2, 11 F.R. 1215, issued and effective January 28, 1946, Reconstruction Finance Corporation was substituted for Defense Supplies Corporation in the directive
 
 
 [11]
 Illinois Packing Co. v. Snyder, Em. App.1945, 151 F.2d 337, 339; Armour & Co. v. Reconstruction Finance Corporation, Em.App.1947, 162 F.2d 918, 922; Earl C. Gibbs v. Reconstruction Finance Corp., Em.App.1948, 169 F.2d 654, 656
 
 
 [12]
 Under Section 7003.1(n) of Revised Livestock Slaughter Payments Regulation No. 3 the accounting period is the calendar month. 10 F.R. 4241
 
 
 [13]
 Executive Order 9841, 12 F.R. 2645, issued April 23, 1947, effective May 4, 1947
 
 
 [14]
 This provision had been previously included in Section 7003.10(a) and was transferred, by Amendment No. 3, to a new subsection (e) of Section 7003.9, 10 F.R. 8073
 
 
 [15]
 10 F.R. 4241
 
 
 [16]
 See our discussion of this point in Earl C. Gibbs, Inc., v. Reconstruction Finance Corp., Em.App.1948, 169 F.2d 654, 658
 
 
 [17]
 10 F.R. 8073, 8074, issued April 24, 1945, effective May 5, 1945
 
 
 [18]
 10 F.R. 4494, issued April 23, 1945, effective April 24, 1945
 
 
 [19]
 See Section 7(c) of Directive 41, 10 F.R. 4494, in the light of which Section 7003.10(c) must be read
 
 
 [20]
 See Stearns Co. of Boston v. United States, 1934, 291 U.S. 54, 65, 54 S.Ct. 325, 78 L.Ed. 647
 
 
 [21]
 Wiggins v. Burkham, 1869, 10 Wall. 129, 77 U.S. 129, 132, 19 L.Ed. 884; Standard Oil Co. v. Van Etten, 1882, 107 U.S. 325, 334, 1 S.Ct. 178, 27 L.Ed. 319