RIVERVIEW PACKING CO., Inc., et al. v.
RECONSTRUCTION FINANCE
CORPORATION.
Civ. A. No. 9775.

United States District Court
D. New Jersey.
July 12, 1950.

378

Thomas J. Brogan, Jersey City, N. J., Morris H. Cohn, Charles S. Gaines, Newark, N. J., for petitioners.

Alfred E. Modarelli, Charles J. Tyne, Newark, N. J., Alexander Boskoff, Washington, D. C., for respondent.

MEANEY, District Judge.

This is an action for a judgment declaring that respondent is unjustly, arbitrarily and illegally withholding certain subsidy payments allegedly due petitioners as slaughterers of bovine animals under the regulations of respondent and its predecessor, the Defense Supplies Corporation. Jurisdiction is allegedly conferred upon this court by the Stabilization Extension Act of 1944, section 102, subsection (m), 50 U.S.C.A.Appendix, § 902 (m).

Respondent answers, denying that it arbitrarily withheld payment on subsidy claims of petitioners, alleging that petitioners had failed to comply with existing regulations and counterclaims as against Riverview Packing Co., Inc., for reimbursement of moneys paid on claims allegedly later invalidated. Respondent also denies the jurisdiction of the court to grant the relief sought.

The matter was referred to a master who furnished the court with two reports, one as to Penn Abattoir Co., and K. & J. Markets, Inc., the other as to Riverview Packing Co., Inc. On motions to confirm the master's reports respondent filed objections and decision was reserved.

The question of jurisdiction has previously been disposed of on motion to strike the petition. However, it may be desirable to set forth the views of the court at this time.

Section 102 of the Stabilization Extension Act of 1944, 50 U.S.C.A.Appendix, § 902 (m), amending the Emergency Price Control Act of 1942, § 2 (m), provides as follows: "No agency, department, officer, or employee of the Government, in the payment of sums authorized by this or other Acts of Congress *relating to the production or sale of agricultural commodities,* * * shall impose any conditions or penalties not authorized by the provisions of the Act or Acts, or lawful regulations issued thereunder, under which such sums are authorized * * *. Any person aggrieved by any action of any agency, department, officer, or employee of the Government contrary to the provisions hereof, or by the failure to act of any such agency, department, officer, or employee, may petition the district court of the district in which he resides or has his place of business for an order or a declaratory judgment to determine whether any such action or failure to act is in conform-

ity with the provisions hereof and otherwise lawful; and the court shall have jurisdiction to grant appropriate relief. * *" (Emphasis supplied.)

On the face of this section, when read alone, it would seem clear that this court has jurisdiction in the instant matter. However, section 204(d) of the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 924(d), had previously conferred exclusive jurisdiction "to determine the validity of any regulation or order issued under section 2", on the Emergency Court of Appeals and the Supreme Court upon review.

■ The withholding of a subsidy payment has been held to be an "order" within the meaning of section 204 of the Emergency Price Control Act even though not expressly so designated by the R. F. C. Armour & Co. v. R. F. C., Em.App., 1947, 162 F.2d 918. This being so, exclusive jurisdiction would appear to be vested in the Emergency Court of Appeals under section 204(d). These two statutory provisions must, however, be construed together, and since section 2 (m) was enacted after section 204(d) it must have been intended to modify section 204(d). Thus the district courts were granted jurisdiction in a limited group of cases previously exclusively within the cognizance of the Emergency Court of Appeals. This has been acknowledged by the Emergency Court of Appeals in the case of Illinois Packing Co. v. Bowles, Em.App., 1945, 147 F.2d 554, 560, where the court said: "Subsection (m) does not purport to withdraw from the Emergency Court of Appeals any jurisdiction theretofore granted to it. It is conceivable, however, that the effect of the subsection, in a narrow class of cases, may be to give to the district courts a jurisdiction concurrent with ours, and to that extent it may, inferentially, modify the provision of § 204(d) making our jurisdiction exclusive."

■ The effect of section 2 (m) has been under judicial consideration several times resulting in decisions which seem to be somewhat in conflict. In Blalack v. United States, 6 Cir., 1946, 154 F.2d 591, at page 596, the court said: "* * * there was blanket jurisdiction in the District Courts

of all matters arising under the Stabilization Act, including challenges to the validity of regulations."

In Illinois Packing Co. v. Defense Supplies Corp., D.C.N.D. Ill. 1944, 57 F.Supp. 8, affirmed 7 Cir., 1946, 156 F.2d 875, it was held that section 2(m) does not give jurisdiction over an action seeking a declaratory judgment finding an amendment to a regulation of the Defense Supplies Corporation invalid The court said that section 2(m) was intended only to cover actions where the agency made a determination which was incorrect in fact. A somewhat similar result was reached in Samett v. R. F. C., 10 Cir., 1947, 165 F.2d 605, where it was said that section 2(m) conferred jurisdiction on the district courts only in cases of administrative action or failure to act under the terms of a valid regulation. The Circuit Court of Appeals for the First Circuit has held in Atlantic Meat Co. v. R. F. C., 166 F.2d 51, that an action to recover meat subsidy payments may not be brought under section 2(m) because meat is not an agricultural commodity. In contrast to this is the decision of the District Court for the Northern District of Illinois in Swift & Co. v. R. F. C., D. C., 79 F.Supp. 546, holding that it had jurisdiction under section 2(m) in an action to recover meat subsidy payments because the subsidy was one "relating to the production or sale of agricultural commodities."

However, whether or not meat is an agricultural commodity, does not seem to this court to be the vital issue here as was decided in Atlantic Meat Co. v. R. F. C., supra, but it seems the inquiry should be directed to whether R. F. C. was an agency engaged in making payments "relating to the production or sale of agricultural commodities". The language used is broad; the statute does not require that the subsidy payment in question be for the production or sale of agricultural commodities, but only *related* to either the production or sale. Significant also on the question of jurisdiction is the fact that petitioners here are not attacking the validity of any regulations but assert that under the regulations they are entitled to payment.

380

Bearing in mind the decisions referred to above, this court concludes that it has jurisdiction in the instant case under section 2(m). In reaching this conclusion the court agrees with the determination in Swift & Co. v. R. F. C., supra, that the subsidy program was intended to benefit the producer and to stabilize the prices of cattle, hence the R. F. C. was "an agency, department, officer or employee of the Government, in the payment of sums authorized by this or other Acts of Congress *relating to the production or sale of agricultural commodities*" within the meaning of section 2(m). Thus the court under section 2(m) has jurisdiction to determine whether "any such action or failure to act is in conformity with the provisions hereof and otherwise lawful."

In attacking the jurisdiction of the court the R. F. C. also alleges that petitioners have failed to exhaust their administrative remedies in that the protest procedure provided in section 203(a), 50 U.S.C.A.Appendix, § 923(a), has not been used. Respondent argues that the protest procedure is a prerequisite to jurisdiction of the Emergency Court of Appeals, Illinois Packing Co. v. Bowles, Em.App., 1945, supra, and if the district court has concurrent jurisdiction it should be subject to the same requirement. The argument has much force. The statutory grant of jurisdiction to the Emergency Court of Appeals was limited to cases where the protest procedure had been followed, 50 U.S.C.A.Appendix, § 924 (a). However, in section 2(m) no such limitation is imposed on the jurisdiction of the district court. The court concludes, therefore, that the petitioners need not have filed a protest before seeking relief in this court.

In his report as to petitioners, Penn Abattoir Co., and K. & J. Markets, Inc., the master stated that the order to show cause placed upon the respondent the burden of proving that payment was withheld for valid and lawful reasons. He found that the respondent had failed to sustain that burden. The master was in error. An order to show cause does not shift the burden of proof. See: Morehouse v. Pacific Hard-ware & Steel Co., 9 Cir., 1910, 177 F. 337; Goldstein v. United States, 5 Cir., 1926, 11 F.2d 593, 60 C.J.S., Motions and Orders, § 20.

Because of this and the reasons set forth below, the motion to confirm the master's report as to K. & J. Markets, Inc., and Penn Abattoir Co. is denied.

### Claims of K. & J. Markets, Inc.

The complaint alleges claims on behalf of K. & J. Markets, Inc., for December 1945, March 1946, and April 1946. Since the institution of the action, however, the R F C has paid the claims for December 1945 and March 1946 and a part of the claim for April 1946. There remains in dispute, then, the sum of $231.79 which the R F C deducted from the claims paid for interest on an account receivable which R F C had set up on its books, and $785.87 deducted because of over-ceiling costs of cattle.

Contemporaneously with the payment of the claims by R F C, K. & J. executed a release in which it released the R F C from all claims for livestock slaughter payments but reserved its claim for the over-ceiling deduction. The master held and this court holds that the release effectively barred petitioner's claim to the item of interest since all claims were released except those specifically reserved.

K. & J. claims that the deduction for over-ceiling costs from its claim for April 1946 is being arbitrarily and capriciously withheld and that its withholding constitutes the imposition of an unauthorized penalty. The petitioner states that its claim is governed by subparagraph 4 of section 7 (b), Directive 41, Office of Economic Stabilization, as amended by Amendment 12, 32 C.F.R. 1947 Supp. § 4004.1. This subparagraph provides for withholding payment of subsidy claims upon certification by the O P A that the slaughterer's report shows a cost of cattle in excess of the maximum permissible cost. The master agreed and concluded that since there had been no certification from O P A as to over-ceiling payments R F C had no right to withhold the sum.

Petitioner's claim, exhibit P-2, on its face shows that it exceeded by $49.50 its maxi-

mum permissible cost for the accounting period. R F C maintains that this sum had been deducted from K. & J.'s claim pursuant to the directive of the Office of Economic Stabilization, dated October 25, 1943, 32 C.F.R. 1943 Supp. § 4004.1(c), and its own regulation section 7003.6 (b)(1), 32 C. F.R. 1945 Supp. § 7003.6 (b)(1), because that was the amount by which petitioner had exceeded its maximum permissible cost. In addition to this R F C says it assessed a 30% penalty under the provisions of Directive 41 § 7(b) (3), 32 C.F.R. 1946 Supp. § 4004.1-7 (b)(3), and respondent's regulation section 7003.6 (b)(3) added by amendment 13, dated March 21, 1946.

■ An examination of the regulations and directives under which R F C claims to have acted indicates that they were in effect at the times material to this action and that the action taken was within their scope. Amendment 12 to Directive 41, supra, did not, as suggested by petitioners, amend section 7 (b)(3) but left it in full force. The court concludes, therefore, that respondent acted within the scope of lawful regulations in withholding the sum now claimed and that petitioner is not entitled to the relief sought.

### Claims of Penn Abattoir

The complaint alleges claims for May, June, September and October of 1946. Since the institution of this action the R F C has paid the claims for May and June and a part of October, leaving the claims for September and a part of October in dispute.

The September claim for $24,141.39 was invalidated by the R F C, it asserts, for failure to comply with the United States Department of Agriculture regulations requiring the setting aside of meat for use of the Armed Services.

Petitioner's only evidence was a copy of the claim filed. Petitioner maintains that all it need do to prove its case is to introduce the claims which contain a statement that no regulations of O P A or the Department of Agriculture have been wilfully violated, and rest. It asserts that the burden is then on the respondent to show affirmatively, by the introduction of compe-

tent evidence, that the claim was properly invalidated.

■ As in any other action petitioner is charged with the burden of proving the facts which underlie its claim. The claim is that the R F C improperly withheld subsidy payments. In this instance to be entitled to relief it must show R F C received no certification of a violation of these regulations. The statements on the claim that the regulations were complied with are self-serving; they were not sworn to, and no testimony was offered in corroboration. Respondent's failure to produce a certification from the Department of Agriculture does not dispense with the necessity of the introduction of evidence on the part of the petitioner. Moreover, exhibit R-1 indicates that R F C had received a certification of violations of set-aside regulations from the Department of Agriculture. Although the certification itself was not produced before the master, counsel for petitioner admitted that a copy of the certification had been produced on answer to interrogatories. In the present posture of the case the evidence does not warrant a finding that respondent's action was unlawful or contrary to the controlling regulations.

■ The sum claimed for October, 1946 by Penn is $8,656.04 which R F C deducted in paying the claim because that was the sum by which Penn's maximum permissible cost for October was exceeded. This is shown on the face of the claim itself, exhibit P-3. Petitioner asserts and the master concluded that this deduction should not have been made because amendment 12 to Directive 41, paragraph 8, provided: "(8) Effective as of the first day of any slaughterer's accounting period scheduled to end after October 14, 1946, but which was terminated automatically prior to such scheduled ending date by operation of law at 12:01 a.m. on October 15, 1946, the provisions of subparagraphs (3) and (4) of this section 7 (b) shall not apply to subsidy claims filed for such shortened accounting period."

Subparagraph (3) of section 7 (b) provided for a penalty deduction of a percentage of the claim where the slaughterer's

claim showed cost in excess of maximum permissible cost. Subparagraph (4) provided for withholding of a percentage of subsidy payments upon certification by the O P A that maximum permissible cost had been exceeded. The regulations under which respondent claims to have acted, the directive of October 25, 1943, supra, and respondent's regulation No. 3, 7003.6 (b)(1), supra, were not affected by this amendment. The amendment relieved slaughterers only of the percentage deductions prescribed by subparagraphs (3) and (4) of section 7 (b) which previously were required to be deducted in addition to that prescribed by the directive of October 25, 1943, supra, and respondent's regulation No. 3, 7003.6 (b)(1), supra. It thus appears that the R F C was acting in accordance with the regulations in making the deductions in dispute and petitioner is not entitled to relief.

### Claim of Riverview Packing Co., Inc.

The petition alleges claims totaling $374,-667.46, covering the period from April 1, 1944 to October 31, 1946. Respondent answers, denying petitioner's claims and alleging they were not valid for failure to keep accurate records; that the available records fail to substantiate the claims, and that the claims were found not to be an accurate reflection of operations. It alleges that it paid the claims for January, February, March, April, May, June, July, August, September and October, 1944 but that later these claims were invalidated by reason of certification by the United States Department of Agriculture that the petitioner had failed to set aside beef for the Armed Forces as required by War Food Order 75, as amended. Respondent also alleges that it paid the claims for November and December, 1944 ( in part) and those for January, February, March, April and May, 1945 but that later these claims were invalidated because of the above-mentioned deficiencies

in petitioner's records. A counterclaim is filed in which is sought the return of $233,-408.11, plus interest allegedly paid to petitioner on claims which were subsequently invalidated.

A review of the evidence convinces the court that the master's finding that Riverview's claims were substantially accurate with the exception of certain arithmetical errors was not clearly erroneous since substantial evidence appears in the record to support this finding. The master also found that the sums claimed by petitioner have been arbitrarily and improperly withheld. Respondent's claimed right to invalidate claims, where in its judgment the claims did not reflect actual operations, seems not to be supported by the directives and regulations nor by case authority. The tenor of the directives and regulations would seem to indicate that the program was set up with the Defense Supplies Corporation, later the R F C, as a paying agent under a duty to pay claims within the class authorized unless a certification was received from O P A or the Department of Agriculture that violations had occurred.[1] Section 7003.10(a) Revised Regulation No. 3 empowered respondent to declare invalid any claim which does not meet the requirements of that regulation. An examination of the regulations, however, discloses no requirement that kill sheets should have been maintained during the period respondent complains of, or that original inventory records be presented to substantiate claims.[2] Respondent's argument that power to declare invalid a claim it deems not reflective of actual operations is inherent, conflicts with the decision in Gibbs v. R. F. C., Em.App., 1948, 169 F.2d 654. The court, 169 F.2d at page 656, speaking through Judge Maris, said, "The corporations in question were mere paying agents, however, without discretionary powers, since Sec. 2(e) expressly provided

1. See: Directive 41 of the Office of Economic Stablization, sec. 7 and sec. 7003.10 (a) of respondent's Revised Regulation No. 3.

2. Sec. 7003.4 of Revised Regulation No. 3 required " * * * accurate records

which furnish complete information in support of each claim, and such other records as may be required by Defense Supplies Corporation." Sec. 8(c) of Regulation 3 required " * * * accurate records of numbers and purchase weight and price of livestock slaughtered * * ."

that payment of the subsidies authorized by it should be 'upon such terms and conditions' as, in the case of commodities defined by the President as strategic or critical materials, were determined by the Federal Loan Administrator, with the approval of the President, to be necessary to attain their purpose."

And 169 F.2d at page 658 the court said, "Indeed, to hold that the subsidy paying agents, Defense Supplies Corporation and its successor Reconstruction Finance Corporation, had inherent authority to invalidate the subsidy claim of such a claimant would render Section 7003.10(a) of the regulation wholly superfluous and meaningless. We conclude that the respondent had no such independent inherent power as it now claims but that its power to invalidate subsidy claims otherwise within the scope of Revised Regulation No. 3 is limited to the cases expressly provided for by the regulation."

Moreover, O P A, and not R F C, was charged with the duty of investigating and arriving at a determination with respect to manipulative practices of the type respondent complains of. See: Sec. 7(c) of Directive 41, Office of Economic Stabilization. The evidence submitted before the master with regard to grader certificates and reports of veterinarians, which tended to show that petitioner had manipulated its weights and grades, might perhaps have been relevant in a hearing before the O P A, but here it is not relevant in the view the court takes of the case. In view of these considerations the findings of the master that respondent acted arbitrarily and improperly are not erroneous. Respondent's order or ruling denying the subsidy was based on an erroneous interpretation of the regulations. Hence its action in denying these claims was unlawful and amounted to the imposition of unauthorized conditions as contemplated by section 2(m) of the Stabilization Extension Act, supra.

The master found, however "That there was no proof, as required by the regulation, that the War Food Administrator or the Secretary of Agriculture had arrived at a determination that the petitioner had willfully violated their regulations." Exhibit R-29, a letter from C. W. Kitchen, Assistant Administrator of the Production and Marketing Administration, United States Department of Agriculture, dated November 21 1945, and addressed to Mr. Stuart K. Barnes of the R F C, stated that it was found that petitioner willfully violated War Food Order No. 75 by failing to set aside beef for the Armed Forces for the period from January 20, 1944 to November 3, 1944. Because this same determination had previously been made in a proceeding dismissed as moot, the master treated the matter as if no such determination had been made. At that time the controlling regulation in effect was Revised Regulation No. 3 of the Reconstruction Finance Corporation, section 7003.10, as amended by amendment No. 3, dated April 24, 1945, and amendment No. 6, dated July 4, 1945. As amended the regulation provided: "Section 7003.10 Invalid Claims (a) Compliance with other Regulations. Reconstruction Finance Corporation shall declare invalid, in whole or in part, any claim filed by an applicant who, in the judgment of the Secretary of Agriculture or the Price Administrator, has willfully violated any regulation or order of their respective agencies applicable to the purchase or sale of livestock or to livestock slaughter or to the sale or distribution of meat, * * *."

Kitchen's letter, by virtue of authority delegated to him by the Secretary of Agriculture (See: 8 F.R. 13696, 14251; 10 F.R. 13041), had the same effect as if it had been written by the Secretary of Agriculture. Thus there appears a sufficient basis for the action taken by R F C. In view of this letter and the above-quoted regulation, it cannot be said that the R F C acted arbitrarily and capriciously in the invalidation of Riverview's claims for the pertinent period. The master's rulings on this phase of the case clearly appear to be in error and will be set aside. Petitioner, Riverview Packing Co., cannot recover subsidies on claims for slaughter during the period from January 20, 1944 to November 3, 1944, and respondent is entitled

to recover on its counter claim for sums actually paid on claims for this period. The remaining findings of the master are adequately supported by evidence in the record, and the conclusions based thereon are not erroneous. Accordingly, they will not be disturbed.

Confirmation of the master's report, with respect to petitioners Penn Abattoir Co. and K. & J. Markets, Inc., will be denied. The report concerning Riverview Packing Co., Inc., modified as outlined in this opinion, will be confirmed.

Settle terms of order and judgment on notice.