196 F.2d 738
 HYGRADE FOOD PRODUCTS CORP.
v.
RECONSTRUCTION FINANCE CORP.
 No. 581.
 United States Emergency Court of Appeals
 Heard at New York, New York, February 25, 1952.
 Decided April 10, 1952.
 
 Rosalind Kramer, New York City, for complainant.
 Maurice S. Meyer, Attorney, Department of Justice, Washington, D. C., with whom J. Gregory Bruce, Attorney, Department of Justice, Washington, D. C., was on the brief, for respondent.
 Before MARIS, Chief Judge, and MAGRUDER and McALLISTER, Judges.
 McALLISTER, Judge.
 
 
 1
 Hygrade Food Products Corporation filed its complaint[1] to review the action of the Reconstruction Finance Corporation in withholding from it the full amount of livestock slaughter subsidy payments for which it had filed claim. According to the regulations here applicable, where slaughterers paid more for cattle than was permitted by the maximum price regulation of the Office of Price Administration,[2] there was applied a sliding scale of automatic deductions from subsidy claims, based on the cattle costs in excess of the maximum permissible costs.[3] In this case, complainant paid more for cattle than the maximum permissible costs. However, by regulation, or so-called directive, it was provided that where such maximum permissible costs for cattle had been exceeded by a slaughterer, it could apply for release of subsidy payments withheld from it on the ground that the payment which it had made in excess of the permissible costs was due to extenuating circumstances; and, upon a finding that overpayment was due to such circumstances, the subsidy which had been withheld, or a portion thereof so attributable, would be released to the slaughterer. Complainant applied for release of the subsidies withheld from it on the ground that its overpayment for the cattle in question was due to extenuating circumstances. These circumstances were alleged to result from a railroad strike during which it was claimed that cattle purchased by complainant, when eventually shipped, sustained, by reason of the delays in shipment caused by the strike, an abnormal tissue shrinkage, as well as a substantial deterioration in grade, and that complainant was unable to obtain sufficient tonnage of appropriate grades to hold the net cost of the cattle within the maximum permissible cost. It is to be recalled that the maximum permissible costs were not based upon the actual live weight of the cattle purchased, but, rather, upon a live weight computed by formula from the weight of the dressed carcass.[4] The live weight of the cattle, as calculated by formula, might be considerably less than the actual live weight when purchased, as a result of shrinkage, or loss of weight, from time of purchase to time of slaughter. Yet the maximum permissible costs for cattle were based upon the "calculated live weight." In the instant case, it was this shrinkage which accounted for the fact that the live weight, calculated from the dressed carcasses, was considerably less than the live weight of the cattle when purchased; and complainant having, by its payment for the live cattle, exceeded the costs, per hundredweight, permissible under the formula based on the dressed carcass, seeks release of subsidies on the ground that the shrinkage of weight, resulting from the railroad strike, was due to extenuating circumstances.
 
 
 2
 Complainant supported its application for release of the subsidies with documentary evidence presented in the course of personal conferences with officials of the government agency in charge of the matter; and after consideration of all the evidence submitted, the Administrator[5] found that complainant's violations of the regulations, by reason of payments for cattle in excess of maximum permissible costs, were due in part to extenuating circumstances, but, in part, were not so attributable. He, accordingly, determined that complainant was entitled only to part of its claim for withheld subsidies. Thereafter, complainant filed its protest.
 
 
 3
 Extensive conferences subsequently took place between the officials and attorneys of complainant company and the officials of the Reconstruction Finance Corporation, and complainant submitted, in support of its protest, considerable additional evidence in the form of data comprising the amount in dollars of the various payments made by complainant for cattle in excess of the maximum costs; the amount of subsidies, orginally withheld, covering operations at complainant's four plants; and the amount of subsidies finally withheld from the company. Complainant further set forth, in the material supporting its protest, the dates of the railroad strike which formed the basis of the claimed extenuating circumstances, and the circumstances affecting the cattle purchased at that time. Moreover, it set forth the excess costs due to the strike; the excess costs, after deducting the railroad strike costs, and computations demonstrating, it was claimed, that if the strike had not occurred, complainant's costs for cattle would not have exceeded the maximum in two of complainant's plants, and only exceeded such maximum in two other plants by such percentages that it would have been entitled to payment of the subsidies as claimed. Many factors were presented by complainant to the Reconstruction Finance Corporation, which, it was insisted, caused complainant to pay in excess of the maximum for its cattle at the various plants and justified release to it of the claimed subsidies. It is unnecessary, for the purpose of this determination, to recount in greater detail the evidence offered by complainant. It is sufficient to say that on its application for payment of subsidies withheld in the amount of $72,999.03, the Administrator released and ordered paid to complainant the sum of $27,424.97. The Reconstruction Finance Corporation, after consideration of the additional evidence presented by complainant in support of its protest, in effect, confirmed the Administrator's determination, and held that the amount of $27,424.97 of the withheld subsidies, representing excess cattle costs, was due to extenuating circumstances; that the balance of $45,574.06 claimed by complainant was not so justified; and payment thereof was, accordingly, refused.
 
 
 4
 Subsequent to denial of the protest, the Hygrade Company filed its complaint in this court, setting forth the claims presented in its protest, supported by the various exhibits filed in the protest proceedings, and petitioned this court to adjudge that the action of the Reconstruction Finance Corporation in denying its protest was arbitrary, inequitable, and unreasonable. In its answer to the complaint, the Reconstruction Finance Corporation admitted, in response to complainant's allegations, that during the accounting period in question, "there was in effect a railroad strike causing excessive delay in transit of Complainant's cattle and causing the cattle shipped during the said period to plants out of reach of local livestock markets at Omaha and Chicago to sustain abnormal tissue shrinkage as well as substantial deterioration in grade, thus making it impossible for the Complainant to obtain sufficient tonnage of appropriate grades to hold the net cost of the cattle within the maximum permissible cost; that although Complainant maintained eight beef slaughtering plants, only the four slaughtering establishments located at Buffalo, Newark and Detroit, the furthest away from the source of supply, made payments over the maximum permissible cost." In further answer to the allegations of complainant, the Reconstruction Finance Corporation, after admitting the foregoing allegations, stated that they had been presented by complainant to the Administrator, "who, in consideration thereof, granted relief to the extent to which he found that the maximum permissible costs were exceeded as a result of railroad freight delay."
 
 
 5
 The Administrator and the Reconstruction Finance Corporation, by their determination, recognized the existence of "extenuating circumstances," justifying release to complainant of a considerable portion of the withheld subsidies; but they denied almost two-thirds of the subsidies claimed. We are unable to ascertain from the record any standards adopted by the Reconstruction Finance Corporation in rejecting this major part of complainant's claim. While administrative orders are presumptively valid, such presumption is only prima facie and disappears upon the introduction of evidence in derogation of such validity. Complainant in this case introduced such evidence, and our attention has not been directed to any contrary proofs; nor can it be ascertained on what grounds the Reconstruction Finance Corporation denied the claim in question other than that the protest did not furnish additional facts that would cause the agency to reverse the Administrator's decision. Having conceded that there existed extenuating circumstances due to the railroad strike, and having determined that complainant was entitled to a large share of the subsidy claimed on that ground, it was necessary, in view of the evidence introduced by complainant, that the Reconstruction Finance Corporation base its decision on substantial evidence and indicate the reasons for its denial of the balance of complainant's claim. Upon the record before us, its failure to do so must be held to be arbitrary.
 
 
 6
 Complainant advances a further argument on this review. It contends that an amendment to the regulations,[6] and the order of the Office of Temporary Controls and its successor, the Reconstruction Finance Corporation, are invalid in that they impose on complainant, in the guise of a condition of payment, harsh and unusual penalties unauthorized by the provisions of the Emergency Price Control Act of 1942, as amended,[7] or of any act or acts or lawful regulations issued thereunder. The foregoing claim was determined by this court adversely to complainant's contention herein, in Evergreen Meat Co. v. Reconstruction Finance Corp., Em.App. 1951, 188 F.2d 368; and this decision, we are not persuaded to overrule.
 
 
 7
 In accordance with the foregoing, the determination of the Reconstruction Finance Corporation will be set aside and the case remanded for a further hearing in accordance with this opinion, with the right of the parties to introduce such additional evidence as they may deem necessary.
 
 
 
 Notes:
 
 
 [1]
 See Evergreen Meat Co. v. Reconstruction Finance Corp., Em.App.1951, 188 F. 2d 368; Merchants Packing Co. v. Reconstruction Finance Corp., Em.App. 1949, 176 F.2d 908; Armour & Co. v. Reconstruction Finance Corp., Em.App. 1947, 162 F.2d 918; Federated Meat Corp. v. Fleming, Em.App.1947, 159 F.2d 725, on jurisdiction of the court, and history and operation of the Cattle Stabilization Program, with relation to subsidy payments
 
 
 [2]
 Maximum Price Regulation 574 (10 F. R. 1270)
 
 
 [3]
 See Amendment 15 to Revised Regulation No. 3, issued pursuant to Amendment No. 3 (11 F.R. 3102), to Directive 41 of the Director, Office of Economic Stabilization
 
 
 [4]
 For details of formula, see Federated Meat Corp. v. Fleming, Em.App.1947, 159 F.2d 725
 
 
 [5]
 See 11 F.R. 14281
 
 
 [6]
 Amendment 15 (Section 7003.6(b) (3)) to Revised Regulation No. 3 of Reconstruction Finance Corporation
 
 
 [7]
 50 U.S.C.A.Appendix, § 901 et seq