## ARMOUR & CO. v. RECONSTRUCTION FINANCE CORPORATION.

### No. 329.

United States Emergency Court of Appeals. Heard at Chicago, March 10, 1947.

Decided June 30, 1947.

As Amended July 31, 1947.

George E. Leonard, Jr., of Chicago, Ill., for complainant.

Carl A. Auerbach, Associate Gen. Counsel, Office of Price Administration, of Washington, D. C. (James L. Dougherty, Acting Gen. Counsel, and John C. Erickson, Counsel Reconstruction Finance Corporation, and Richard H. Field, Gen. Counsel, Harry H. Schneider, Asst. Gen. Counsel, William R. Ming, Jr., Chief, Irving J. Helman, Nancy Fraenkel Wechsler and Miss Catherine W. Goldman, Attys., Office of Price Administration, all of Washington, D. C., on the brief), for respondent and intervenor.

Before MARIS, Chief Judge, and MAGRUDER and McALLISTER, Judges.

MARIS, Chief Judge.

The complainant is a slaughterer of livestock and a distributor of meat. It has participated in the meat and livestock subsidy program and has filed claims for livestock slaughter payments for each month since October 1, 1944. On September 6, 1945 an indictment was returned to the United States District Court for the Eastern District of Pennsylvania charging the complainant and 19 of its employees with having conspired to violate the laws of the United States.[1] On September 27, 1945 the complainant was advised by the local office of the Reconstruction Finance Corporation that RFC expected "letter OPA withholding subsidy from Armour and Company covering six months" and that the "September claim will not be paid until matter is clarified." On October 4, 1945 the Acting Regional Price Administrator wrote the Reconstruction Finance Corporation that he had conducted an investigation of five branch houses of complainant and found that they had wilfully violated price regulations and conspired to evade the regulations by means of tie-in sales, that the violations occurred during the periods from October 2, 1944 to November 27, 1944, from January 23, 1945 to March 7, 1945 and on August 1, 1945, that he had referred the matter to the United States attorney for criminal prosecution and that an indictment had been returned on September 6, 1945. The Regional Price Administrator recommended that there be withheld a percentage of the livestock slaughter payments for the subsidy periods during which the violations occurred.[2] No notice or hearing was accorded to the complainant by the Office of Price Administration prior to or after the communication of October 4, 1945 nor was a copy of the letter sent to the complainant by either the Office of Price Administration or the Reconstruction Finance Corporation. On October 10, 1945 the Reconstruction Finance Corporation acting under Section 7003.10 of Revised Regulation No. 3 withheld $500,000 from the complainant's livestock slaughter payments. Upon re-

---

[1] This indictment was nol prossed on July 24, 1946 and on the same day a new indictment was returned, charging the complainant and a number of its employees with conspiracy to violate the laws of the United States and with 45 substantive violations of meat, poultry and dairy price regulations. Subsequent to the filing of this complaint the complainant was tried on the indictment in the United States District Court for the Eastern District of Pennsylvania. It was acquitted of the charge of conspiracy and of 28 of the 45 charges of substantive violations of price regulations. It was found guilty on 17 counts, of which 13 involved violations of regulations pertaining to meat. A motion for a new trial was denied. An appeal is now pending in the Circuit Court of Appeals for the Third Circuit.

[2] General Order 54 issued by the Price Administrator on February 23, 1944 (9 F.R. 2197) provides: "I hereby delegate to any Regional Administrator, or Acting Regional Administrator, the authority to make findings that livestock slaughterers have wilfully violated any regulation of the Office of Price Administration relating to the sale or distribution of meat and based upon such findings to recommend to Defense Supplies Corporation that they take action pursuant to Section 10(a) of Regulation No. 3 of Defense Supplies Corporation."

computation this sum was reduced to $480,859.43.[3]

The complainant protested Section 7003.-10 of Revised Regulation No. 3 and the action of the Reconstruction Finance Corporation thereunder in withholding the livestock slaughterer subsidy payments. The directors of RFC denied the protest. In the letter accompanying the order of denial they stated:

"I. That said withholding was made pursuant to a determination by the Price Administrator that Armour and Company had wilfully violated a meat or livestock regulation; * * *

"II. That said withholding was authorized and required and was not discriminatory, arbitrary or capricious."

■ They annexed a copy of the Acting Regional Administrator's letter of October 4, 1945 which recommended withholding pursuant to Section 7003.10(a) of Revised Regulation No. 3 and Section 7(b) (1) of office of Economic Stabilization Directive No. 41. The complainant filed its complaint in this court naming the Reconstruction Finance Corporation as respondent.[4] The Price Administrator intervened. The complainant contends, inter alia, that Section 7003.10(a) of Revised Regulation No. 3 of Reconstruction Finance Corporation upon which the respondent relies is contrary to law because it provides a form of punishment for violation of the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 901 et seq., not authorized by the Act, and that it denies the complainant due process of law because it provides for administrative determination of substantive rights without notice and hearing.

On October 10, 1945, when Reconstruction Finance Corporation first withheld the subsidy payments Section 7003.10(a) of Revised Regulation 3,[5] as amended by Amendment 6,[6] read as follows: "Reconstruction Finance Corporation shall declare invalid, in whole or in part, any claim filed by an applicant who, in the judgment of the Secretary of Agriculture or the Price Administrator, has wilfully violated any regulation or order of their respective agencies applicable to the purchase or sale of livestock or to livestock slaughter or to the sale or distribution of meat * * *"

The Office of Economic Stabilization, which had been given overriding authority over the entire subsidy and stabilization program by executive order,[7] issued Directive 41[8] which in Section 7(b) (1) provided that: "Defense Supplies Corporation is directed to continue its present procedure of declaring invalid, in whole or in part, any claim for subsidy payment filed by an applicant who, in the judgment of the Price Administrator, has wilfully violated any meat or livestock regulation or order issued by the Price Administrator. Such a judgment shall be made only in the event the alleged violation is referred to the United States Attorney for prosecution."

Amendment No. 2 to Directive 41 substituted Reconstruction Finance Corporation for Defense Supplies Corporation wherever the latter appears in the directive.[9]

The complainant asserts that Section 7003.10(a) of the regulation is directed solely to enforcement of price regulations promulgated under the Emergency Price Control Act. It points to the fact that Section 205 of the Act makes provision for enforcement of its terms by injunction, by civil suits for damages, by criminal proceedings and by suspension of licenses. It argues that neither this section nor any other section of the Act provides for the denial

---

[3] After the protest, on February 25, and March 3, 1947 the Reconstruction Finance Corporation released all of the subsidy payments originally withheld except for $5,295 allocable to the Norristown branch of the complainant for the month of February, 1945.

[4] The jurisdiction of this court has been properly invoked. Compare Illinois Packing Co. v. Snyder, Em.App., 1945, 151 F.2d 337.

[5] 10 F.R. 8073, issued April 24, 1945 and effective May 5, 1945.

[6] 10 F.R. 11155, issued July 4, 1945 and effective July 1, 1945.

[7] Executive Order 9250, 50 U.S.C.A. Appendix, § 901 note, 7 F.R. 7871.

[8] 10 F.R. 4494, issued April 23, 1945 and effective April 24, 1945.

[9] 11 F.R. 1215, issued and effective the 28th day of January, 1946.

of subsidies to one who has violated its provisions. The Act, the complainant says, has created new rights and the remedies provided in the statute for enforcement of those rights are exclusive.[10] Consequently, it argues, the section of the regulation under attack is unauthorized by law and to that extent the regulation is invalid.

We have heretofore held that the livestock slaughter subsidy was basically a production subsidy and as such was authorized by Section 2(e) of the Act.[11] That section expressly provided that payment of the subsidies authorized by the section should be "upon such terms and conditions" as are determined to be necessary to attain their purpose. We have also previously pointed out that these subsidies were not mere gratuities or bounties but were closely articulated with the price control program and operated as compensatory in nature so as to validate a lower level of legal maximum prices than otherwise would have been permissible under the standards laid down in the Act for the guidance of the Price Administrator.[12]

Under these circumstances we think it was wholly reasonable to condition the receipt of the subsidy upon compliance with the price regulations which the subsidy was thus designed to supplement and support. To deprive violators of the subsidy was not for the purpose of penalizing them but to prevent the diversion of subsidy funds from the accomplishment of the object for which they were intended. We conclude that Section 7003.10(a) of Revised Regulation No. 3 was authorized by Section 2(e) of the Act.

The complainant also contends that the provisions of Section 7003.10(a) operate to deny it due process of law. It points to the fact that a subsidy claim is required to be invalidated by the RFC solely upon the determination by the Price Administrator that the claimant has violated a livestock or meat regulation, and that this determination is not required to be made after hearing or even after notice to the claimant. The respondent asserts in reply that in administering the section a distinction has been made in practice between invalidation of subsidy claims involving the permanent withholding of payment of the subsidy claims on the one hand, and mere temporary withholding of payment of a subsidy claim on the other hand. It says that while subsidy payments have been withheld upon certification of violation by the Price Administrator in advance of a judicial determination of guilt such withholding has in practice uniformly been regarded by it as temporary and contingent upon a subsequent judicial determination of the claimant's violation. Permanent withholding, it says, has only been made when the Price Administrator's determination of the claimant's violation is based upon a judicial determination of his guilt.

We pause to consider the distinction thus made by the respondent. While we have no reason to suppose that the practice has not been as suggested, we observe no basis for it in the regulation. Section 7003.10(a) reads only in terms of the invalidation of subsidy claims. If a claim is invalid it can furnish no basis for payment either now or in the future. No hint is given in the regulation that it is intended to authorize temporary withholding of payment upon a claim the invalidity of which is still to be decided. It may be conceded that such temporary withholding has obvious advantage for the government and does no irreparable harm to the claimant. It may well be, therefore, that the RFC is acting within its authority thus to withhold subsidy payments temporarily. But the legal basis for such action is not before us. Suffice it here

[10] The complainant cites Globe Newspaper Co. v. Walker, 1908, 210 U.S. 356, 28 S.Ct. 726, 52 L.Ed. 1096; Hassel v. United States, 3 Cir., 1929, 34 F.2d 34; United States v. Klein, 8 Cir., 1946, 153 F.2d 55; and Switchmen's Union v. National Mediation Board, 1943, 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61. To these cases may be added Bruce's Juices v. American Can Co., 67 S.Ct. 1015.

[11] Illinois Packing Co. v. Bowles, Em. App., 1945, 147 F.2d 554, 556, 557; Gibbs v. Defense Supplies Corp., Em. App., 1946, 155 F.2d 525, 526, 527; Ben H. Rosenthal & Co., Inc., v. Porter, Em. App., 1946, 158 F.2d 171, 174, 175.

[12] Illinois Packing Co. v. Snyder, Em. App., 1945, 151 F.2d 337, 339.

to say that we find no support for the practice in Section 7003.10(a) of Revised Regulation No.3.

We turn then to the question whether Section 7003.10(a) of Revised Regulation No. 3 is valid when considered solely as authorizing the RFC to invalidate (that is, to withhold permanently the payment of) a subsidy claim in the case of a claimant who has violated a livestock or meat regulation. In determining this question the regulation must be viewed in its setting as one issued under Section 2 of the Emergency Price Control Act. For in the case of a regulation issued under Section 2 orders issued under its authority are themselves orders under Section 2 of the Act and as such their validity is reviewable by protest under Section 203 and by complaint in this court under Section 204.[13]

We have held that the protest procedure of Section 203 of the Act affords to one who is aggrieved by an order issued under a price or rent regulation that opportunity for a hearing of his case de novo which the Fifth Amendment requires.[14] Section 204 provides for judicial review of the protest proceeding in this court. The action of the RFC in invalidating a subsidy claim and withholding payment thereof is undoubtedly an "order" within the meaning of Sections 203 and 204, even though not expressly so designated by the RFC. It follows that a subsidy claimant whose claim is invalidated by the RFC under the authority of Section 7003.10(a) of the regulation on the basis of a determination by the Price Administrator that the claimant has violated a livestock or meat regulation may secure a hearing on that question by filing his protest with the RFC against the invalidating action and therein asserting as a ground of objection that he is innocent of the violation charged and that the Administrator's finding to the contrary is erroneous. In such a protest proceeding the board of directors of the RFC must determine de novo, from the evidence offered in the proceeding, whether the claimant has in fact violated the regulation. Evidence that the fact of innocence or guilt had been judicially determined would, of course, be conclusive.

In view of the opportunity for a hearing thus afforded by the protest procedure of the Act we cannot accept the complainant's contention that Section 7003.-10(a) is invalid as denying to a subsidy claimant due process of law merely because it confides in the Price Administrator in the first instance and without a hearing at that stage the determination of the question whether the claimant has violated a pertinent regulation.

The only other objection made by the complainant to Section 7003.10(a) which we need discuss is that it is invalid because it permits the withholding of subsidy payments in amounts which are entirely disproportionate to the claimant's offense and thus authorizes arbitrary and capricious action on the part of the RFC in exercising the withholding power given to it. It will be observed that the power granted to the RFC is to declare subsidy claims "invalid, in whole or in part". A discretion is thus lodged in the RFC to determine the amount of subsidy to be withheld in each case according to a standard having a reasonable relation to the facts of the particular case and the purpose of the regulation. If in any particular case the amount of subsidy withheld did not have such a reasonable basis in the light of the facts of the case but was shown to be arbitrary or capricious it would, of course, be set aside by the RFC upon protest or, if that agency failed to act, by this court upon complaint.

The respondent asserts, however, that in practice subsidy payments have been withheld under Section 7003.10(a) only to the extent of the payments allocable to the accounting period or periods during which the violations occurred and, in the case of a subsidy claimant having more than one selling establishment, only to the extent of the payments allocable to the selling establishment which committed the violations. The criterion which is thus said to have been applied in administering the discretionary power conferred by the regulation

---

[13] Smith v. Bowles, Em.App., 1944, 142 F.2d 63, 64.

[14] Direct Realty Co. v. Porter, Em. App., 1946, 157 F.2d 434, 438.

is certainly logical, fair and reasonable. We conclude that Section 7003.10(a) of Revised Regulation No. 3 is not invalid upon any of the grounds asserted by the complainant.

This brings us to the complainant's protest against the action of RFC in withholding its subsidy payments. As has been said, a single protest was filed against both the regulation and the action of the RFC in withholding the complainant's subsidy payments thereunder. A careful study of the protest shows that the objections set forth in it all go to the validity of the regulation. It thus appears that complainant's objection to the validity of the RFC's action was merely that it was taken under an invalid regulation. It was not asserted by way of objection that the Acting Regional Administrator's finding that complainant had violated certain price regulations relating to meat was erroneous and that it was in fact innocent of any such violation. We accordingly have no basis for holding in this case that the action of the RFC in withholding the complainant's subsidy payments was invalid.

A judgment will be entered dismissing the complaint.