**RIVERVIEW PACKING CO., Inc., v. RECONSTRUCTION FINANCE CORP.**

**APPEAL OF RECONSTRUCTION FINANCE CORP.**

**Appeal of RIVERVIEW PACKING CO., Inc.**

**Nos. 10732, 10757.**

United States Court of Appeals Third Circuit.

Argued May 18, 1953.

Decided Sept. 30, 1953.

Rehearing Denied Dec. 2, 1953.

Thurman Arnold, Milton V. Freeman, Washington, D. C. (Arnold, Fortas & Porter, Washington, D. C., Charles S. Gaines, Millburn, N. J., Thomas J. Brogan, Jersey City, N. J., Herman A. Greenberg, Richard A. Frank, Arnold, Fortas & Porter, Washington, D. C., on the brief), for Riverview Packing Co., Inc.

George Arthur Fruit, Washington, D. C. (Warren E. Burger, Asst. Atty. Gen., Grover C. Richman, Jr., U. S. Atty., Newark, N. J., Marvin C. Taylor, Chief, Frauds Section, Washington, D. C., on the brief), for Reconstruction Finance Corp.

Before MARIS, STALEY and HASTIE, Circuit Judges.

MARIS, Circuit Judge.

This suit was brought in the United States District Court for the District of New Jersey by the plaintiff, a slaughterer of livestock, to collect from the defendant the sum of $374,667.46 in unpaid meat subsidy claims filed in 1944, 1945 and 1946, the payment of which had been withheld by the defendant. The defendant filed a counterclaim in the suit to recoup from the plaintiff the sum of $233,408.11 in subsidies which it had paid to the plaintiff in the years 1944 and 1945 upon claims which the defendant now asserts were invalid.

The case was referred by the district court to a master who took voluminous testimony. The master found that all of the subsidy claims filed by the plaintiff were substantially accurate and correct and were a true reflection of the plaintiff's operations. He accordingly recommended the dismissal of the defendant's counterclaim and the entry of judgment in favor of the plaintiff for the full amount of its claim less a deduction for arithmetical errors amounting to $4,227.12 and for terminal inventory on October 14, 1946, the day on which the subsidy program ended, amounting to $1,901.70, a total deduction of $6,128.82. The amount of the judgment recommended to be entered in favor of the plaintiff was accordingly $368,548.64 with interest.

Objections to the master's report were filed by the defendant. Upon consideration of these objections the district court sustained the master's findings that the plaintiff's subsidy claims were valid and accurate except as to the claims filed for the period January 20, 1944 to November 3, 1944 which claims the court found had been lawfully invalidated by the defendant upon the basis of a determination by a deputy of the Secretary of Agriculture that the plaintiff had been guilty during that entire period of wilfully violating War Food Order No. 75 by failing to set aside beef for the armed forces in the amounts required. The court accordingly directed the entry of judgment for the plaintiff upon its unpaid claims for the years 1945 and 1946 only and the entry of judgment for the defendant upon its counterclaim for the amount of subsidy which the defendant had paid to the plaintiff for the period from January 20, 1944 to November 3, 1944 and which the defendant had not theretofore recouped from the plaintiff. 92 F.Supp. 376.

Judgment was thereupon entered in favor of the plaintiff in the sum of $330,931.75 with interest at the rate of 4% per annum on allowable claims computed from one month after date of filing of claims totaling $59,253.75, or a total sum of $390,185.50, and in favor of the defendant in the sum of $66,673.45 plus interest on its allowable claims at the rate of 4% per annum computed from the dates on which the respective claims were paid to the plaintiff which totaled $15,997.83, or a total sum of $82,671.28.

Deducting the said sum of $82,671.28 from the sum of $390,185.50 a final judgment was entered in favor of the plaintiff and against the defendant for the sum of $307,514.22, which sum the defendant was directed to pay to the plaintiff within 60 days. From the judgment thus entered both the defendant and the plaintiff have appealed to this court.

The subsidy payments and claims in controversy were made under section 2(e) of the Emergency Price Control Act of 1942, as amended, 50 U.S.C.A.Appendix, § 902(e), upon meat produced from the slaughter of cattle, calves, and sheep. The basis of the subsidy program and the manner in which it was authorized and carried out have been fully set forth by the Emergency Court of Appeals in its opinions in Wm. Schluderberg-T. J. Kurdle Co. v. Reconstruction Finance Corp., 1948, 169 F.2d 419, certiorari denied 335 U.S. 846, 69 S.Ct. 68, 93 L.Ed. 396; Earl C. Gibbs, Inc. v. Reconstruction Finance Corp., Em.App., 1948, 169 F.2d 654; Merchants Packing Co. v. Reconstruction Finance Corp., Em.App., 1949, 176 F.2d 908, and other cases, and need not be repeated here. It is sufficient to recall that originally Defense Supplies Corporation was the instrumentality through which the subsidy was paid and that after June 30, 1945 the defendant, Reconstruction Finance Corporation, was the paying agent. Both corporations operated under the directions of the Federal Loan Administrator who in turn was required to carry out the overriding policy directives issued by the Director of Economic Stabilization under the Stabilization Act of 1942, 50 U. S.C.A.Appendix, § 961 et seq.[1]

Meat subsidy claims were governed during the period from June 7, 1943 through October 14, 1946, the whole period of the subsidy program, successively by Livestock Slaughter Payments Regulation No. 3 of Defense Supplies Cor-

poration[2] and Revised Livestock Slaughter Payments Regulation No. 3 of Defense Supplies Corporation and its successor in administering the subsidy program Reconstruction Finance Corporation.[3] Regulation No. 3 was applicable to the plaintiff's meat subsidy claims between June 7, 1943 and January 29, 1945. Revised Regulation No. 3 was applicable to its subsidy claims from January 29, 1945 to June 30, 1946 when the original meat subsidy program ended. Regulation No. 10 of Reconstruction Finance Corporation[4] specifically made Revised Regulation No. 3 applicable to the re-established meat subsidy program which was in force between September 1 and October 14, 1946.

These regulations required the plaintiff to file its claims for subsidy for each monthly accounting period upon the cattle slaughtered in that period upon the basis of the "chilled carcass weight" of the beef produced from slaughter in that month by "grades as graded by an official grader of the United States Department of Agriculture", and showing the live weight and the cost of all of the cattle slaughtered in the plant in that period, but excluding from the live weight, although not from the cost, all condemned cattle and beef. The subsidy rates varied and were computed according to the reported grades of beef, and the amounts of subsidy varied as all these different factors varied.

The regulations provided that claims should be paid upon a purely preliminary basis but that Defense Supplies Corporation (after June 30, 1945 its successor, Reconstruction Finance Corporation) should have the right to require restitution of any payment or part of a payment upon a finding that the claim was invalid or defective. The regulations also always provided that Defense Supplies Corporation (after June 30, 1945 its successor, Reconstruction Finance Cor-

---

1. Earl C. Gibbs, Inc. v. Reconstruction Finance Corp., Em.App., 1948, 169 F.2d 654.

2. 8 FR 10826; 15799; 9 FR 1820; 1821.

3. 10 FR 4241; 7539 8073; 11553–11555.

4. Issued August 28, 1946, effective September 1, 1946.

poration) should have "the right to declare invalid, in whole or in part, any claim which does not meet the requirements of this regulation."

The regulations also contained provisions requiring the preservation of books and records by subsidy claimants and giving Defense Supplies Corporation (after June 30, 1945 its successor, Reconstruction Finance Corporation) the right to declare invalid any claim of an applicant who failed to comply with these requirements. Finally it should be noted that the regulations from their inception contained a provision that Defense Supplies Corporation (after June 30, 1945 its successor, Reconstruction Finance Corporation) should have the right to declare invalid, in whole or in part any claim filed by an applicant who in the judgment of the War Food Administrator (after June 30, 1945 his successor, the Secretary of Agriculture) or the Price Administrator has wilfully violated any regulation of their respective agencies applicable to livestock slaughter or the sale or distribution of meat.

The plaintiff is a New Jersey corporation which during most of the subsidy period slaughtered cattle, calves and sheep in its plant in Paterson, New Jersey. Its subsidy claims for the period from January 1, 1944 to November 4, 1944, amounting to $111,963.75, were paid by Defense Supplies Corporation although the portion of this amount paid for the period from April 3, 1944 to July 1, 1944, totaling $37,616.89, was subsequently recouped by Defense Supplies Corporation from later payments made to the plaintiff. The plaintiff's subsidy claims for the period from November 6, 1944 to June 2, 1945, amounting to $159,061.25, were also paid. Its claims for the periods from June 4, 1945 to December 29, 1945, amounting to $201,706.96, for the period from April 1, 1946 to June 30, 1946, amounting to $85,886.36, and for the period from September 3, 1946 to October 14, 1946, amounting to $49,467.25, have not been paid by the defendant, which contends that these claims as well as the earlier claims which have been paid are all invalid because of the failure of the plaintiff to keep accurate records, because its available records fail to substantiate its claims as filed and because the claims were found not to be an accurate reflection of the plaintiff's operations.

The defendant contends that it has declared invalid all of the plaintiff's subsidy claims filed for the years 1944 and 1945 for these reasons, that in addition it has declared the plaintiff's subsidy claims for the period from January 20, 1944 to November 3, 1944 invalid by reason of the plaintiff's wilful violation of War Food Order No. 75 as determined by the Secretary of Agriculture, and that these orders of invalidation by it must be accepted and applied in this case by the district court and by this court on appeal without inquiry into their validity. On this premise the defendant argues that the judgment entered for the plaintiff, at least so far as it relates to the plaintiff's subsidy claims for the years 1944 and 1945, should be reversed and that the judgment entered by the district court on the defendant's counterclaim should be modified by including therein all of the subsidy payments which it made to the plaintiff for the years 1944 and 1945 and which have not heretofore been recouped.

The plaintiff on the other hand contends that the district court was empowered to determine the validity of its subsidy claims on their merits without regard to the actions of the defendant in invalidating them and in refusing to pay those accruing after June 2, 1945. It urges that the master was right in finding that the plaintiff's subsidy claims were accurate and correct and entitled the plaintiff to receive the full amount of its claims and that the district court erred in concluding that the defendant lawfully invalidated the claims filed for the period from January 20, 1944 to November 3, 1944 and was, therefore, entitled on its counterclaim to recoup the subsidies paid for that period and not

previously recouped. The issues raised on these appeals are thus defined and we proceed to their consideration.

■ We consider first the plaintiff's contention that the district court was entitled to consider the validity of the subsidy claims and was not bound to give unquestioned effect to the actions of the defendant in invalidating and refusing to pay them. It is true, of course, that section 204(d) of the Emergency Price Control Act of 1942 as amended, 50 U.S.C.A. Appendix, § 904(d), expressly vests in the Emergency Court of Appeals exclusive jurisdiction to consider the validity of regulations and orders issued under section 2 of the Act and expressly deprives all other courts of power to do so. Regulation No. 3 and Revised Regulation No. 3 were both issued under section 2(e) of the Act.[5] Likewise it is settled that determinations by Reconstruction Finance Corporation invalidating subsidy claims, even though informally expressed, are orders issued under section 2(e) of the Emergency Price Control Act.[6] The plaintiff in the present suit, however, relies upon section 2(m) of the Emergency Price Control Act of 1942, as added in 1944, as having conferred upon the district court the power to entertain this suit and therein to review the lawfulness of the action of the defendant in invalidating its subsidy claims. It is settled by the overwhelming weight of authority, with which we are in complete accord, that section 2(m) does not apply to the payment of meat subsidies.[7] It follows that section 2(m)

does not authorize the present suit nor confer upon the district court any power which it would not otherwise have to consider the validity of the action of the defendant with respect to the plaintiff's subsidy claims.

This does not necessarily mean, however, that the district court does not have jurisdiction of the case. It unquestionably has jurisdiction of the defendant's counterclaim under section 1345 of Title 28, United States Code, since, as we shall point out, the defendant is an agency of the United States which is expressly authorized to sue by Act of Congress. We think that the court also has jurisdiction of the plaintiff's action under section 1331 of Title 28. For the subsidy claims which the plaintiff seeks to enforce arise under the laws of the United States and amount to more than $3,000.[8] The defendant is, of course, a corporate agency of the United States. As such it is expressly authorized by statute to sue and be sued.[9] It argues, however, that it is acting in the subsidy program merely as a paying agent for the United States and that, therefore, it may invoke in this case the sovereign immunity of the United States against suit.

It may be conceded that the purpose of the plaintiff's suit is to obtain subsidy funds the ultimate source of which is the treasury of the United States. We may likewise concede that such a suit may not be brought unless the United States has waived its sovereign immunity.[10] But here Congress by section 2(e) of the

5. Illinois Packing Co. v. Bowles, Em.App., 1945, 147 F.2d 554; Evergreen Meat Co. v. Reconstruction Finance Corp., Em. App., 1951, 188 F.2d 368, 374.

6. Riverview Packing Co. v. Reconstruction Finance Corp., Em.App., 1953, 207 F.2d 415, and cases there cited.

7. Samett v. Reconstruction Finance Corporation, 10 Cir., 1947, 165 F.2d 605, certiorari denied 334 U.S. 812, 68 S.Ct. 1017, 92 L.Ed. 1743; Atlantic Meat Co. v. Reconstruction Finance Corp., 1 Cir., 1948, 166 F.2d 51; Tambasco v. Reconstruction Finance Corporation, 2 Cir., 1949, 178 F.2d 283; Swift & Co. v. Reconstruction Finance Corp., 7 Cir., 1950,

183 F.2d 456, certiorari denied 340 U.S. 878, 71 S.Ct. 123, 95 L.Ed. 638.

8. These facts clearly appear in the plaintiff's initial pleading. The rule laid down in McNutt v. General Motors Acceptance Corp., 1936, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135, is therefore satisfied.

9. "It shall have power * * * to sue and be sued, to complain and to defend, in any court of competent jurisdiction, State or Federal; * * *." 15 U.S.C. A. § 603.

10. Mine Safety Appliances Co. v. Forrestal, 1945, 326 U.S. 371, 373, 66 S.Ct. 219, 90 L.Ed. 140.

Emergency Price Control Act expressly provided that the subsidy payments should be paid only by corporations created or organized pursuant to section 5d of the Reconstruction Finance Corporation Act, 15 U.S.C.A. § 609j, as determined by the Federal Loan Administrator. Pursuant to that authority the Federal Loan Administrator designated Defense Supplies Corporation to carry out the meat subsidy program.[11] That corporation had been incorporated under section 5d of the Reconstruction Finance Corporation Act in 1940. In common with its parent, the defendant, its charter gave it express power "to sue and be sued".[12] By the Act of June 30, 1945, 59 Stat. 310, 15 U.S.C.A. § 611 note, Defense Supplies Corporation was dissolved and its functions, powers and duties were transferred to the defendant which was required to assume and be subject to all its liabilities, whether arising out of contract or otherwise. The defendant, as we have seen, was expressly authorized by law to be sued. There is, therefore, on the face of the record express authority for the present suit, unless in this case the defendant is endowed with the Government's immunity.

The question of jurisdiction, therefore, comes down to whether Congress by section 2(e) of the Emergency Price Control Act intended to endow its corporate subsidy paying agents with governmental immunity from suit or whether on the contrary it intended that their corporate capacity to be sued should extend to their subsidy paying activities. This is a question of legislative intent which we must resolve since Congress did not deal with it expressly.[13] We think that there are sufficient indications that the latter was the Congressional intent. By section 2(e) Congress directed that subsidies should not be paid by Government officers, to whom immunity would apply, but exclusively by certain Government corporations which, as we have seen, were expressly authorized to be sued. The meat subsidy payments were not mere gratuities or bounties but were articulated with the price control program and operated as compensatory in nature so as to validate a lower level of maximum meat prices than otherwise would have been permissible under the Emergency Price Control Act.[14] Meat slaughterers who qualified under the subsidy regulations thus were entitled to the subsidy as a matter of right and not of grace. This fact was, of course, known to Congress when on June 30, 1945 it transferred the duty of making subsidy payments from Defense Supplies Corporation to the defendant, a corporation which it had previously expressly authorized "to * * * be sued, * * and to defend, in any court of competent jurisdiction, State or Federal". It is reasonable to suppose that Congress intended that by suits against the defendant, slaughterers entitled to the subsidy should have convenient legal recourse for the payments due them.[15]

We are fortified in our conclusion by another consideration. If the district court did not have jurisdiction of the plaintiff's action it unquestionably had jurisdiction of the defendant's coun-

---

11. Earl C. Gibbs, Inc. v. Reconstruction Finance Corp., Em.App., 1948, 169 F.2d 654, 657.

12. 6 FR 2972.

13. Federal Land Bank of St. Louis v. Priddy, 1935, 295 U.S. 229, 231, 55 S.Ct. 705, 79 L.Ed. 1408; Keifer & Keifer v. Reconstruction Finance Corp., 1939, 306 U.S. 381, 389, 59 S.Ct. 516, 83 L.Ed. 784.

14. Illinois Packing Co. v. Snyder, Em.App. 1945, 151 F.2d 337, 339; Armour & Co. v. Reconstruction Finance Corporation, Em.App., 1947, 162 F.2d 918, 922.

15. It is true that Atlantic Meat Co. v. Reconstruction Finance Corp., 1 Cir., 1948, 166 F.2d 51, 56, and Reconstruction Finance Corp. v. MacArthur Mining Co., 8 Cir., 1950, 184 F.2d 913, 917, certiorari denied 340 U.S. 943, 71 S.Ct. 505, 95 L.Ed. 681, contain statements that Reconstruction Finance Corporation may not be sued for subsidies or premiums claims under section 2(e) of the Emergency Price Control Act because these claims are in reality against the United States which has not waived its sovereign immunity. These statements were not necessary to the decision of those cases;

terclaim. As a defense to the counterclaim the plaintiff would in any event be entitled to assert its own claim for unpaid subsidies by way of setoff or recoupment.[16] Thus the district court would be empowered at all events to consider the merits of the plaintiff's claims. And in so doing the court would be empowered to strike a balance of just demands and judicially ascertain thereon that the defendant was indebted to the plaintiff in an ascertained amount, even though no formal judgment could be rendered against the defendant.[17] Such a determination of the merits of the plaintiff's claim might well be res judicata in a later suit in the Court of Claims.[18] Moreover in view of the fact that the claims of both parties arise out of the same subsidy program it is a close question whether the district court would not have jurisdiction of the whole controversy under the doctrine of United States v. The Thekla, 1924, 266 U.S. 328, 45 S.Ct. 112, 69 L.Ed. 313, regardless of any claim of governmental immunity. We conclude, therefore, that the district court had jurisdiction of the plaintiff's action against the defendant under section 1331 of Title 28, U.S.C.

■ In exercising its jurisdiction under section 1331 the district court was, of course, precluded by the express prohibition of section 204(d) of the Emergency Price Control Act of 1942, as amended, from questioning the validity of the various provisions of the meat subsidy regulations and of any action of the defendant thereunder with respect to the plaintiff's subsidy claims which amounted to orders under section 2(e) of the Act and which as such would be subject to review only by the Emergency Court of Appeals under section 204(a) of the Act. As to any such orders the duty of the district court was merely to interpret and apply them to the facts of this case.[19]

■ After judgment was entered in this case in the district court and while the present appeals were pending the plaintiff filed a protest with the defendant under section 203(a) of the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 923(a), and upon its denial a complaint in the Emergency Court of Appeals under section 204(a) of the Act seeking to have the action of the defendant in invalidating and refusing to pay its subsidy claims set aside by the Emergency Court of Appeals. In that case the Emergency Court of Appeals has rendered its decision holding that the defendant did not make any order, of a character sufficiently definite and final to be the subject of protest and review by that court, invalidating the complainant's subsidy claims upon the ground that they were inaccurate and did not properly reflect the plaintiff's operations, as the defendant here alleges. The Emergency Court of Appeals held that

however, since in each of them the plaintiff sought to overturn in the district court an adverse determination made under section 2(e) of the Act the validity of which the court of appeals held was reviewable only by the Emergency Court of Appeals. The courts in those cases, therefore, did not have occasion to consider the facts to which we have referred and which indicate to us a Congressional intent to waive Governmental immunity, when a claim for subsidy not involving the review of an adverse order of Reconstruction Finance Corporation is brought to the district court.

16. Bull v. United States, 1935, 295 U.S. 247, 261–262, 55 S.Ct. 695, 79 L.Ed. 1421; United States v. Shaw, 1940, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888;

United States v. National City Bank of New York, 2 Cir., 1936, 83 F.2d 236, 106 A.L.R. 1235, and note, 1241.

17. United States v. Eckford, 1867, 6 Wall. 484, 73 U.S. 484, 491, 18 L.Ed. 920.

18. Compare United States v. Shaw, 1940, 309 U.S. 495, 504, 60 S.Ct. 659, 84 L.Ed. 888, with Commissioner of Internal Revenue v. Sunnen, 1948, 333 U.S. 591, 598, 68 S.Ct. 715, 92 L.Ed. 898.

19. Bowles v. Griffin, 5 Cir., 1945, 151 F.2d 458, 460; Gordon v. Bowles, Em.App., 1946, 153 F.2d 614, 615, certiorari denied 328 U.S. 858, 66 S.Ct. 1350, 90 L.Ed. 1629; Baggett v. Fleming, 10 Cir., 1947, 160 F.2d 651, 654; Noble v. Ricker, 10 Cir., 1948, 165 F.2d 983, 985.

the only reviewable order appearing in the proceedings of the defendant with respect to the plaintiff's subsidy claims was its letter order of November 28, 1945 invalidating the plaintiff's claims for the period from January 20, 1944 to November 3, 1944 by reason of its wilful violation of War Food Order No. 75 as determined by the Department of Agriculture. The court considered the validity of this order and determined that it was valid. It accordingly dismissed the plaintiff's complaint. Riverview Packing Co., Inc. v. Reconstruction Finance Corporation, Em.App., 1953, 207 F.2d 415.

It has thus been definitely and finally determined in a proceeding between the parties to the present suit that the only outstanding order by the defendant invalidating subsidy claims of the plaintiff to which the district court and this court on appeal are required to give effect without considering its merits is the letter order of the defendant dated November 28, 1945 invalidating the claims for the period from January 20, 1944 to November 3, 1944, during which the plaintiff had been determined by a deputy of the Secretary of Agriculture to have wilfully violated the War Food order. Accordingly the district court had full authority to consider on their merits the validity of all the plaintiff's subsidy claims in the light of the defenses raised by the defendant thereto except those for the period from January 20, 1944, to November 3, 1944.

Turning to the merits of the plaintiff's subsidy claims, other than those for the period in 1944 referred to, the defendant contends that the claims as filed were not correct, that they did not accurately reflect the plaintiff's slaughtering operations, that the plaintiff's books and records were not accurate or complete and that the plaintiff was guilty of manipulation of its records. For these reasons the defendant urges that the plaintiff's claims were invalid and not entitled to payment under the regulations. The plaintiff on the other hand asserts that its subsidy claims were ac-

curate and correct as were its books and records and that they truly reflected its slaughtering operations. On the issue of fact thus raised a vast amount of sharply conflicting testimony was taken by the master who found in favor of the plaintiff that its books, records and subsidy claims were substantially accurate and correct and truly reflected its slaughtering operations. These findings, which were based in part upon the master's appraisal of the testimony of the witnesses before him in the light of their demeanor on the witness stand, were upheld by the district court. It would serve no useful purpose here to recount in detail the voluminous evidence in the case. It is sufficient merely to say that our review of it fully satisfies us that the findings of the master, approved by the district court, were not clearly erroneous and may, therefore, not be set aside by this court.

As has already been stated, the district court held, overruling the master on the point, that the defendant's order invalidating the plaintiff's subsidy claims for the period from January 20, 1944 to November 3, 1944, was valid and applicable and required the disallowance of those claims and recoupment of the amounts paid thereon. In considering the validity of this order of the defendant the district court went beyond its authority but its ultimate conclusion was correct that the order must be applied in this case since the order in question was one issued under section 2(e) of the Emergency Price Control Act which was reviewable only by the Emergency Court of Appeals and which, as we have seen, has in fact been reviewed and held valid by that court.

It follows from what has been said that the district court did not err in holding (1) that the plaintiff's subsidy claims for the periods from January 1, 1944 to January 19, 1944 and from November 4, 1944 to October 14, 1946 were valid; that the plaintiff was entitled to retain the subsidies which the defendant and its predecessor Defense Supplies Corporation had paid to it for the pe-

riods from January 1, 1944 to January 19, 1944 and from November 4, 1944 to June 2, 1945, and to recover in this suit the subsidies, amounting in net aggregate to $330,931.75, claimed by it for the period from June 4, 1945 to October 14, 1946 which the defendant has refused to pay to it and (2) that the plaintiff's subsidy claims for the period from January 20, 1944, to November 3, 1944 were invalid and that the defendant is entitled on its counterclaim to recover from the plaintiff so much of the subsidy paid for that period as it has not already recouped from the plaintiff for the period from April 3, 1944 to July 1, 1944, the amount thus recouped being $37,616,89, and the balance recoverable by the defendant on its counterclaim as liquidated by the parties in the judgment entered by the district court being $66,673.45. Accordingly the judgment of the district court must be affirmed so far as regards the principal amounts recoverable by the plaintiff and defendant on their claim and counterclaim respectively.

It remains for us to consider the matter of interest. The district court included in its judgment in favor of the plaintiff and against the defendant interest at the rate of 4% per annum on the plaintiff's allowable subsidy claims computed from one month after date of filing each claim, the total amount of interest allowed being $59,253.75. We think that this was error. The defendant Reconstruction Finance Corporation does not stand in judgment in this case as a private corporation[20] but rather as a paying agent for the Government of the United States charged with the responsibility of disbursing public funds in carrying out a Government program, the payment of livestock slaughter subsidies.[21] No provision of the subsidy regulations nor any statute or other Government regulation authorizes the payment of interest upon deferred subsidy claims. In the absence of such authority the district court was without power to impose interest upon the United States[22] either directly or by judgment against its paying agent.

The district court also included interest at the rate of 4% per annum from the dates on which the respective claims were paid in the judgment which it entered in favor of the respondent on its counterclaim against the plaintiff. We think that it was proper to allow interest at this rate on these claims[23] but only during such periods of time as the amounts thus due by the plaintiff to the defendant by way of restitution of subsidies paid upon its invalid claims were not offset by amounts due by the defendant to the plaintiff upon its unpaid subsidy claims for the period after June 4, 1945. In other words, in computing the interest due by the plaintiff upon the sum of $66,673.45 payable by it to the defendant the plaintiff should be credited with the amounts due it by the defendant upon its unpaid subsidy claims for the monthly periods from and after June 4, 1945, each such claim being credited as of the date one month after the date of the original filing of the claim. The interest thus computed should, of course, be added to the principal amount of sub-

20. Compare National Home for Disabled Volunteer Soldiers v. Parrish, 1913, 229 U.S. 494, 33 S.Ct. 944, 57 L.Ed. 1296; Standard Oil Co. v. United States, 1925, 267 U.S. 76, 79, 45 S.Ct. 211, 69 L.Ed. 519.

21. Earl C. Gibbs, Inc. v. Defense Supplies Corporation, Em.App., 1946, 155 F.2d 525, 530; Earl C. Gibbs, Inc. v. Reconstruction Finance Corp., Em.App., 1948, 169 F.2d 654, 656.

22. Angarica v. Bayard, 1888, 127 U.S. 251, 260, 8 S.Ct. 1156, 32 L.Ed. 159; United States v. Verdier, 1896, 164 U.S. 213,

17 S.Ct. 42, 41 L.Ed. 407; Boston Sand Co. v. United States, 1928, 278 U.S. 41, 49 S.Ct. 52, 73 L.Ed. 170; Smyth v. United States, 1937, 302 U.S. 329, 353, 58 S.Ct. 248, 82 L.Ed. 294; United States v. Thayer-West Point Hotel Co., 1947, 329 U.S. 585, 67 S.Ct. 398, 91 L.Ed. 521; United States v. Alcea Band of Tillamooks, 1951, 341 U.S. 48, 71 S.Ct. 552, 95 L.Ed. 738.

23. United States v. Philmac Mfg. Co., 3 Cir., 1951, 192 F.2d 517, 519; Wilson & Co. v. Reconstruction Finance Corporation, Em.App., 1952, 194 F.2d 1016.

sidy, $66,673.45, recoverable by the defendant on its counterclaim and the total then deducted from $330,931.75, the amount recoverable by the plaintiff under the complaint, in determining the net amount of the judgment to be entered in favor of the plaintiff and against the defendant.

The judgment of the district court will be vacated and the cause will be remanded with directions to enter a new judgment modified with respect to interest as indicated in this opinion.