**UNITED STATES of America,**
**Plaintiff,**

v.

**TRENTON PACKING COMPANY,**
**Defendant.**

**Civ. A. No. 631–53.**

United States District Court
D. New Jersey.

April 11, 1955.

Raymond Del Tufo, Jr., U. S. Atty., Newark, N. J., Herman Scott, Asst. U. S. Atty., Passaic, N. J., Maurice S. Meyer, Dept. of Justice, Washington, D. C., for the motion.

Levy & Levy, by Philip J. Albert, Trenton, N. J., Contra.

FORMAN, Chief Judge.

This is a motion for summary judgment brought by the plaintiff seeking a liquidated sum in damages and dismissal of defendant's counterclaim. The facts are not in dispute.

In 1946, defendant, a livestock slaughterer, received subsidies from the Gov-

ernment pursuant to Section 2(e) of the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 902(e), as part of the national program of economic stabilization. The meat subsidy program was then under the administration of the Reconstruction Finance Corporation.

Under Office of Economic Stabilization Directive 41, § 7 (10 F.R. 4494; 10 F.R. 4340), as implemented by Reconstruction Finance Corporation Revised Regulation No. 3, § 7003.10(a), the administrative agency was directed to withhold payment of subsidy claims in the event of a certification by appropriate representatives of the Office of Price Administration that the subsidy-applicant had slaughtered livestock in excess of his authorized quota. The agency regulations further provided for restitution in the event that a claim which had been paid after receiving preliminary approval was later found to be invalid or defective (10 F.R. 4341).

On November 29, 1946 the Reconstruction Finance Corporation received a certification from the Office of Price Administration to the effect that defendant had exceeded its slaughter quotas for subsidy periods of May and June 1946. In accordance with the above mentioned regulations and directives the agency invalidated defendant's subsidy claims for these periods, notifying defendant of its action by a letter dated March 6, 1947.

Subsequently, on January 16, 1948, as a result of a reaudit of defendant's records, the Reconstruction Finance Corporation reduced the June 1946 subsidy claim of the defendant from the original amount of $16,026.16 to $10,785.93, basing the reduction on the imposition of penalties. The latter amount was disbursed to defendant on February 18, 1948. A subsequent investigation revealed that the entire subsidy claim for June 1946 had been invalidated because of the excessive slaughter referred to in said letter of March 6, 1947. Hence the plaintiff contends that the remittance of $10,785.93 of February 18, 1948 was inadvertent.

This investigation arose as a result of a letter from defendant to plaintiff, dated January 18, 1950, in which defendant requested reimbursement in the amount of $4,211.81 plus interest, that figure representing half the sum paid as damages to the plaintiff for a violation of OPA R.M.P.R. 169 in 1943. In view of the fact that defendant had never been convicted of a criminal violation of that regulation, it was entitled to a return of one half of the double damages which it had paid.

This request prompted a complete review of the entire file relative to defendant's dealings with the Reconstruction Finance Corporation, which resulted in the discovery that the payment of $10,785.93 subsidy claim for June 1946 was inadvertent in view of the fact that the entire claim had been invalidated for excessive slaughter.

Accordingly, the Reconstruction Finance Corporation, by a letter to defendant on April 3, 1950, reaffirmed its invalidation of the June 1946 subsidy claim and set up a claim receivable against defendant in the amount of $10,785.93. In the same letter, interest of $917.25 was charged, and a credit of $4,661.58 (representing the $4,211.81 reimbursement plus interest) was made, resulting in an ultimate balance of $7,041.60 as a claim receivable, of which sum reimbursement was requested by the Government. Formal demand for this amount with interest was requested by the Government in several subsequent letters. Upon defendant's refusal to comply with that demand the Government has brought the instant action.

Defendant, on the other hand, claims that the correspondence between the parties establishes that a settlement had been reached resolving many differences relating to subsidy claims and penalties and that the payment of the $10,785.93 on February 18, 1948 was pursuant to that settlement. It contends that this

alleged settlement constituted an accord and satisfaction and that it therefore has no obligation to return the $10,785.93. Additionally, defendant has filed a counterclaim for $4,661.58, the amount of credit given by the Government in its letter of April 3, 1950, alleging that this amount is still due and owing to the defendant.

Sections 203(a), 50 U.S.C.A.Appendix, § 923(a) and 204(a), 50 U.S.C.A.Appendix, § 924(a) of the Emergency Price Control Act of 1942 govern the procedure for administrative and judicial review of administrative decisions. Judicial review of administrative orders is vested exclusively in the Emergency Court of Appeals: 50 U.S.C.A.Appendix, § 924(d).

■ The letters from the Reconstruction Finance Corporation to the defendant, dated March 6, 1947, and April 3, 1950, which determined that defendant's subsidy claim for June 1946 was invalid, constituted orders within the meaning of the Act. Armour & Co. v. R. F. C., Em. App.1942, 162 F.2d 918; Merchants Packing Co. v. R. F. C., Em.App., 176 F.2d 908.

The validity of such orders could only be considered by the Emergency Court of Appeals, no other federal court having jurisdiction in this regard. Yakus v. United States, 1944, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834; See Riverview Packing Co. v. R.F.C., 3 Cir., 1953, 207 F.2d 361, 368.

■■ Defendant, however, advances the proposition that the defense of accord and satisfaction may properly be raised here and that such defense does not constitute an attack upon the validity of an administrative order. This might be true if only the letter order of March 6, 1947 were under consideration here. Such is not the case. The letter order of April 3, 1950, issued from the Reconstruction Finance Corporation to the defendant well after the transactions which are alleged to constitute a settlement and to establish an accord and satisfaction. That letter order stands as a tacit repudiation of any such settlement. Since it constituted an order of the agency, it could only be reviewed by the appropriate procedure as set forth in the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 924(a). By Reconstruction Finance Corporation Regulation No. 11 (15 F.R. 6193), December 15, 1950, was set as the deadline for the filing of protests under the Act. Defendant's failure to file a timely protest has caused its remedy to lapse. The letter order of April 3, 1950 must be treated as a valid order by this court. Accordingly, the contents of that order, establishing that as of that date the defendant was indebted to the plaintiff in the amount of $7,041.60, are binding.

■ Defendant also alleges that it is entitled to extra compensation subsidy claims in the amount of $120,191.82. The counterclaim includes a prayer in that amount. In this regard, however, the facts show that defendant petitioned for that amount on October 27, 1950, and that the petition was treated as a protest and denied by a letter dated December 19, 1950. At that time the appropriate procedure dictated that judicial review be sought under Section 204(a) of the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 924(a), which vested sole jurisdiction in the Emergency Court of Appeals. Defendant failed to avail itself of that remedy within the prescribed period of time and is now precluded from attacking the determination of the Reconstruction Finance Corporation. Amodio v. Reconstruction Finance Corp., Em.App.1951, 191 F.2d 862.

The motion of the plaintiff seeking summary judgment on the complaint and dismissal of the counterclaim will be granted and an order should be settled in conformity herewith.