UNITED STATES of America,
Plaintiff-Appellee,

v.

A–1 MEAT COMPANY, Inc., Defendant-
Appellant.

No. 155, Docket 24702.

United States Court of Appeals
Second Circuit.

Argued Feb. 4 and 5, 1958.

Decided May 23, 1958.

Saul A. Finkel, New York City (William Macy, New York, City, on the brief), for defendant-appellant.

Robert J. Ward, Asst. U. S. Atty., New York City (Paul W. Williams, U. S. Atty., for Southern Dist. of New York, New York City, on the brief), for plaintiff-appellee.

Before MEDINA, WATERMAN, and MOORE, Circuit Judges.

MEDINA, Circuit Judge.

A-1 Meat Company, Inc. appeals from a judgment, entered by the court below on motion of the Government, for summary judgment, which awarded the United States the restitution of subsidy payments made by it to A-1, a livestock slaughterer, pursuant to Section 2(e) of the Emergency Price Control Act of 1942, as amended, 50 U.S.C.Appendix, § 902(e). A-1 also appeals from that part of the judgment which denied its cross-motion for summary judgment on its claim that it was entitled to a further and additional subsidy payment.

By way of background to the controversy in the case at bar we shall consider the statutory framework against which the Government's subsidy program was carried on during the Second World War, from 1942 to 1946. Section 2(e) of the Emergency Price Control Act of 1942, 50 U.S.C.Appendix, § 902(e), authorized the Federal Loan Administrator to pay subsidies "in such amounts and in such manner and upon such terms and conditions" as the Administrator, with the approval of the President, should determine to be necessary to obtain the required production of commodities previously determined by the President to be "strategic" or "critical." This section further provided that these subsidies were to be paid by corporations created and organized pursuant to Section 5d of the Reconstruction Finance Corporation Act, as amended, 15 U.S.C. § 606b (3).* Since the President defined meat as a "strategic or critical material," the Federal Loan Administrator, with the approval of the President, was thus authorized to determine the necessity for subsidy payments to producers of this commodity.

On May 7, 1943 the Livestock Slaughter Subsidy Program was instituted, and, on this same day, the Federal Loan Administrator directed the President of the Defense Supplies Corporation, a corporation created pursuant to Section 5d of the Reconstruction Finance Corporation Act, to pay subsidies to livestock slaughterers, packers and wholesalers. The purpose of the subsidy was to relieve the squeeze upon slaughterers and wholesalers which resulted from uncontrolled live cattle prices and controlled meat prices.

The Defense Supplies Corporation was dissolved by Congress on June 30, 1945, and its subsidy administration functions were transferred to the Reconstruction Finance Corporation. On June 30, 1946, the price and subsidy programs lapsed temporarily but they were reinstated by the Price Control Extension Act of 1946, 60 Stat. 664, effective July 25, 1946. The subsidy program terminated when the Price Administrator ended price controls on October 15, 1946.

The large number of monthly subsidy claims made the prompt determination of the validity of each claim administratively impossible. On the other hand, delay in the payment of these

* Now 15 U.S.C.A. § 604.

claims would have deprived the slaughterers of the working capital necessary for the continuance of their operations. Accordingly, slaughterers were permitted to certify that their claims were accurate and that they had not wilfully violated any regulation of the Office of Price Administration or of the War Food Administration during the monthly reporting period covered by each claim. This certification was required because, in order to further the goal of the price and distribution control programs, compliance with the regulations of the OPA and the WFA was a condition precedent to the slaughterers' right to receive subsidy payments. Thus, the Defense Supplies Corporation was authorized to pay, upon preliminary approval alone, subsidy claims duly certified by a slaughterer. However, "upon a determination of any court of first instance" that the slaughterer had violated "any substantive provision of an (OPA) meat or livestock regulation or order," the Defense Supplies Corporation was authorized to "withhold payment of all subsidy claims of the applicant for the accounting period in which the violation is found to have occurred." Section 7 (b) (2), Directive 41 of the Office of Economic Stabilization, as added by Amendment 2, 11 F.R. 1215, 32 C.F.R. (1946 Supp.) p. 5069. To further insure compliance with regulations adopted under the price and distribution control programs, the RFC was directed to "declare invalid, in whole or in part, any claim of any applicant who * * * (t)he Price Administrator certifies to (the RFC) has been determined in a civil proceeding to have violated a substantive provision of any regulation or order of the (OPA) applicable to the purchase or sale of livestock or to livestock slaughter or to the sale or distribution of meat * * *," Section 7003.10(a) (2), Amendment No. 15, Regulation No. 3, Revised, of the Reconstruction Finance Corporation; and "(o)n a finding that (a) claim is invalid or defective, (the) Defense Supplies Corporation [after June 30, 1945, the RFC] shall have the right to require restitution of any payment or any part thereof." Section 7003.9, Regulation No. 3, Revised, of Defense Supplies Corporation, 10 F.R. 4241, 32 C.F.R. (1945 Supp.) p. 3603.

The procedure for review to be followed is set forth in some detail in the statutory and administrative scheme applicable to these subsidy payments. Both administrative and judicial review of administrative orders requiring restitution of subsidy payments was expressly provided for in the Emergency Price Control Act of 1942. "At any time" after the issuance of an order under Section 902 of the Act, any person subject to the provisions of the order was entitled to file a protest with the Administrator, who was required to act on this protest within thirty days. 50 U.S.C. Appendix, § 923(a). After denial of the protest, judicial review by the Emergency Court of Appeals, and by writ of certiorari to the Supreme Court was then available. 50 U.S.C.Appendix, § 924(a), (d). It was also provided, however, that the final date for filing a protest against an administrative order was December 15, 1950, RFC Regulation 11, 15 F.R. 6193; and the denial of such a protest was a prerequisite to review of the order by the Emergency Court of Appeals.

With this statutory and administrative background in mind, we turn now to an examination of the facts in the case at bar. A-1 submitted a claim to the RFC for meat subsidies for the December, 1945 accounting period. Early in 1946, after preliminary approval, this claim was paid in the amount of $3,750.39. In February, 1946, the United States sued to restrain A-1 from continuing to slaughter cattle and, on March 29, 1946, secured a temporary injunction ordering A-1 not to do or omit to do any act or acts in violation of MPR 574, and not to pay, nor offer, solicit, attempt or agree to pay more than the maximum amount for cattle which it slaughtered.

Thereafter, the RFC notified A-1 by means of letters and adjustment forms that its December, 1945 subsidy claim was invalid and demanded restitution of

the amount paid as a subsidy, less $578.-19, the amount of A-1's January, 1946 subsidy claim,[1] which was applied against the Government's claim for $3,-750.39. In addition to demanding restitution because of a violation of an OPA regulation for the December, 1945 period, the first letter sent to A-1, dated May 8, 1946, notified the company that an "Agent's Adjustment Form" specifying the amount due would follow shortly, and also stated that interest at the rate of 4% per annum would be computed on the unpaid balance due to the Government. The adjustment form was sent on July 10, 1946, and on May 12, 1947 another letter was sent to A-1 requesting payment of the balance of the subsidy plus interest in the amount of $171.25, and notifying the company that interest would continue to accrue. On August 27, 1947 another letter demanding payment informed A-1 that the claim for $3,172.20 "resulted from the invalidation of your December 1945 cattle claim by reason of OPA certification of wilful violation" of a price regulation. The final letter sent to A-1, dated March 10, 1948, again sought payment "(b)efore recommending to our Washington Office, that the receivable be referred to the U. S. Department of Justice for action."

Appellant raises several objections to the granting of the Government's motion for summary judgment and the denial of its cross-motion. At the outset A-1 concedes that the validity of an administrative order issued in conformity with the applicable departmental directives could be tested only by the procedure prescribed by the Emergency Price Control Act and that, pursuant to this statute, the Emergency Court of Appeals was given exclusive jurisdiction to judicially review the validity of such an order. But appellant argues that the directives can be read as requiring, for the issuance of a valid order, that there be a court determination that a price control regulation had been violated, a certification of this determination by the OPA to the RFC, and a notification by the OPA to the subsidy applicant that the certification was being made, see Section 7(b)(2) of Directive 41, Office of Economic Stabilization, 11 F.R. 1215, and that there was no evidence before the District Court that these requisites were fulfilled before sending the letters and the adjustment form to A-1. Therefore, appellant contends, the Government's motion for summary judgment should have been denied and the complaint should have been dismissed.

█ With regard to the procedural requirements for the issuance of a valid "administrative order" in a case such as the one at bar, it is settled law that no technical form for the embodiment of the "order" is necessary. A definite order or direction to make restitution contained in a letter is sufficient. United States v. Bass, 8 Cir., 215 F.2d 9, 13; Riverview Packing Co. v. Reconstruction Finance Corp., Em.App., 207 F.2d 415, 420; see Riverview Packing Co. v. Reconstruction Finance Corp., 3 Cir., 207 F.2d 361, 366. Accordingly, it is clear that the RFC letter of May 8, 1946 which stated that "restitution of the monies paid (on A-1's December, 1945 subsidy claim) is demanded" was adequate in form and definiteness of statement to constitute an "administrative order."

█ The law is also well settled that the District Court lacks "jurisdiction or power to consider the validity of any * * * order" relating to subsidy payments.[2] 50 U.S.C.Appendix, § 924(d);

---

1. A-1's counterclaim was for this sum which the company contends was improperly withheld and applied. We necessarily dispose of this claim as an adjunct to our disposition of the principal question on this appeal.

2. 50 U.S.C.Appendix, § 902(m) provides for an exception to this rule and con-

fers jurisdiction on the District Courts in certain cases involving an "agricultural commodity." Livestock, however, is not such a commodity within the meaning of Section 902(m). Tambasco v. Reconstruction Finance Corp., 2 Cir., 178 F.2d 283, 285.

Yakus v. United States, 321 U.S. 414, 430–431, 64 S.Ct. 660, 88 L.Ed. 834; Tambasco v. Reconstruction Finance Corp., supra, footnote 2; Riverview Packing Co. v. Reconstruction Finance Corp., 3 Cir., 207 F.2d 361, 368; Reconstruction Finance Corp. v. MacArthur Mining Co., 8 Cir., 184 F.2d 913, 917; Illinois Packing Co. v. Reconstruction Finance Corp., 7 Cir., 156 F.2d 875. Thus whether the claim of invalidity of the order is based upon the merits or upon some alleged failure to observe the procedural requirements of the applicable statutory and administrative scheme, in either case the sole judicial body competent to pass upon any of these questions was the Emergency Court of Appeals. In other words, whether the subsidy applicant had violated an order or regulation of the OPA and hence was not entitled to the subsidy, or whether there had been a court determination that there had been such a violation and a certification thereof by the OPA to the RFC and a notification to the subsidy applicant of such certification, are all questions affecting the validity of the order and consequently all are matters beyond the jurisdiction of a District Court to determine because only the Emergency Court of Appeals had power to pass upon the validity of such an order. In no other fashion could the integrity of the subsidy program have been maintained. For, if such questions as A-1 now presses upon us could have been raised in the District Courts the whole program would have been in jeopardy.

■ Moreover, in the instant case it is clear that the requisite procedural steps were taken prior to the issuance of the order. There was a "determination" in a civil proceeding that A-1 had violated a price regulation when, on March 29, 1946, the Government secured an interlocutory injunction against future violations of the regulations. Such a proceeding involved the "determination" required by the applicable directives. Federated Meat Corp. v. Reconstruction Finance Corp., Em.App., 183 F.2d 588, 592.

Evidence that the necessary certification was made prior to issuance of the administrative order is contained in the RFC letter of August 27, 1947 which informed A-1 that its December, 1945 claim had been invalidated "by reason of O. P. A. certification of wilful violation of MPR 574." While there is no evidence, nor even the contention by the United States, that A-1 was notified of this certification at the time it was made, the directives require such notification only when a subsidy payment is being withheld but not when, as in the case at bar, the Government is seeking restitution of a payment already made.

It is apparent that the proper course for A-1 to have pursued was to protest the validity of the order, on procedural grounds or on the merits, through the specified administrative channels, and if dissatisfied with the result of this protest, then to seek further review by the Emergency Court of Appeals. The deadline for utilizing this procedure, however, was December 15, 1950. Regulation 11, § 4.2, 15 F.R. 6193. A-1 first received the administrative order now contested on or about May 8, 1946, and by the letter of August 27, 1947, was clearly informed of the procedural steps which had been taken with regard to the demand for restitution. Thus, ample time was afforded A-1 to protest the validity of the order by means of the statutory procedure specifically outlined in the Emergency Price Control Act.

Although the complaint in the case at bar was filed on September 15, 1954, more than eight years after the subsidy payment was made, appellant does not claim that the Government's suit is barred by lapse of time. Rather, A-1's final contention is that the United States is estopped to assert that A-1 has no right to protest, on its merits, the determination that A-1 had wilfully violated a price regulation in December, 1945. This alleged estoppel is based on the Government's action in instituting, in February, 1946, the proceeding which led to its securing an interlocutory injunction against A-1 on March 29, 1946,

and then, without further prosecuting this action moving to dismiss it on June 19, 1950. To hold otherwise, argues appellant, would enable the United States inequitably to profit from an "entrapment" of A-1, since the meat company was allegedly lulled into inaction and thus failed to protest against the administrative order demanding restitution, because of the pending action commenced by the United States.

The Government, on the other hand, explains the dismissal of its action against A-1 by noting that price control legislation expired on June 30, 1947, and thus when its suit was dismissed there was no longer any need for the injunctive relief which it had previously secured. In addition, argues the Government, under the review procedures established by the Emergency Price Control Act A-1 had the burden, after the issuance of the administrative order, to raise any objection it had by appeal to the Administrator and then to the Emergency Court of Appeals. The United States did nothing, the argument continues, to mislead appellant or cause it to believe this remedy was not available.

We agree with the position urged by the Government. From the time of the first letter to A-1 until the deadline for protest to the Administrator more than four and one-half years passed during which A-1 certainly had ample opportunity to protest the order. There were several additional communications from the RFC which were apparently ignored by A-1. All of these notifications were sent after the Government had secured the temporary injunction against A-1. It is difficult to understand how such action by the RFC could have misled the meat company regarding the Government's position. Dismissal of the pending suit in June, 1950 in no way affected the rights of either of the parties. The plain fact seems to be, as is so often the case, that A-1 hoped the Government would fail or neglect to sue for the recovery of the subsidy and this hope proved to be illusory.

Affirmed.